[No. C058486. Third Dist. Aug. 28, 2009.]

WELLS FARGO FINANCIAL LEASING, INC., Plaintiff and Respondent,
v.
D & M CABINETS et al., Defendants;
VICTORIA WOLFE-DAVIS, Third Party Claimant and Appellant.

**62**

**COUNSEL**

Jerrold B. Braunstein for Third Party Claimant and Appellant.

Serlin & Whiteford and Kevin P. Whiteford for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—This appeal involves enforcement of a money judgment under the Enforcement of Judgments Law (EJL). (Code Civ. Proc., § 680.010 et seq.)[1] Victoria Wolfe-Davis (appellant) appeals from a trial court order appointing a receiver (§ 708.620)[2] to sell her owner-occupied dwelling to foreclose a judgment lien obtained by plaintiff Wells Fargo Financial Leasing, Inc. (Wells

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Section 708.620 states, "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and

Fargo), in a lawsuit against a business (defendant D & M Cabinets) co-owned by appellant's (former) husband Charles Daniel Davis (Davis). Only appellant and Wells Fargo are parties to this appeal. Appellant contends the order is improper because it expressly allows the judgment creditor to bypass the statutory procedure for foreclosing a judgment lien on a dwelling occupied as the principal residence of a debtor or his spouse and therefore subject to an automatic homestead[3] exemption. (§ 704.740.)[4] We agree with appellant and, because the only purpose for appointing the receiver was to sell the subject real property in avoidance of section 704.740, we shall reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, appellant married Davis, who did business with a partner under the name D & M Cabinets. In June 2001, appellant and Davis separated but reconciled before their eventual divorce in 2005. In October 2001, appellant's mother conveyed a fee interest in the subject real property to appellant and Davis as husband and wife. Since then, appellant has resided on the property.

D & M Cabinets encountered financial difficulties and was sued by various suppliers. Wells Fargo sued for breach of a commercial equipment lease and obtained a judgment against D & M Cabinets, Davis, and his partner, in

the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." A copy of the order is attached as an appendix, *post*.

[3] California Constitution, article XX, section 1.5, states, "The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families."

The Legislature has so provided in the EJL, sections 704.710 through 704.850. Section 704.710, subdivision (c), defines "homestead" as "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead. Where exempt proceeds from the sale or damage or destruction of a homestead are used toward the acquisition of a dwelling within the six-month period provided by Section 704.720, 'homestead' also means the dwelling so acquired if it is the principal dwelling in which the judgment debtor or the judgment debtor's spouse resided continuously from the date of acquisition until the date of the court determination that the dwelling is a homestead, whether or not an abstract or certified copy of a judgment was recorded to create a judgment lien before the dwelling was acquired."

[4] Section 704.740 provides: "(a) Except as provided in subdivision (b) the interest of a natural person in a dwelling may not be sold under this division [part 2, title 9, division 2, Enforcement of Money Judgments, sections 695.010 through 709.030] to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article [part 2, title 9, division 2, chapter 4, article 4, Homestead Exemption, sections 704.710 through 704.850]. [¶] (b) If the dwelling is personal property or is real property in which the judgment debtor has a leasehold estate with an unexpired term of less than two years at the time of levy: [¶] (1) A court order for sale is not required and the procedures provided in this article relating to the court order for sale do not apply. [¶] (2) An exemption claim shall be made and determined as provided in Article 2 (commencing with Section 703.510)."

December 2003. An amended judgment in May 2004 created a judgment lien on real property, including the subject property.[5] (Wells Fargo says other judgment liens totaling about $41,000 have priority over Wells Fargo's lien.) In September 2004, the parties to the Wells Fargo suit signed a forbearance agreement, which allowed the judgment debtors to pay off the judgment in monthly installments but stated that, in the event they defaulted, "Wells Fargo shall have the right to the immediate appointment of a receiver to enforce the Judgment, which appointment may be obtained ex parte and without bond." The judgment debtors defaulted after making only one payment. Wells Fargo obtained partial satisfaction of the judgment through appointment of a receiver to liquidate the inventory and equipment of D & M Cabinets.

In June 2005, appellant filed a petition for marital dissolution. She and Davis stipulated to a judgment dissolving the marriage, signed by the court in September 2005. The marital dissolution judgment said the subject property was appellant's separate property, acquired by her pursuant to a grant deed dated August 17, 2004.[6] Appellant acknowledges she did not take adequate care to protect her rights in the marital dissolution, stating in her appellate brief that she, "thinking that the issues involved only a division of property to which the parties had already agreed, and being unaware of any judgments or liens, engaged a paralegal to prepare the necessary documents to terminate the marriage. The stipulation for judgment prepared by the paralegal made no mention of any judgments much less obligations and it is contended by [appellant] that no Declaration of Disclosure was ever served on her by her ex-husband." The marital dissolution judgment issued in September 2005.

As of October 2007, $109,719 remained unpaid on the Wells Fargo judgment. Appellant testified in a debtor's examination that she believed the subject property was worth $346,000, which was its appraised value in February 2007.

In November 2007, Wells Fargo filed a motion for an order appointing a receiver to sell the subject real property without complying with the homestead procedure of section 704.740 (see, ante, fn. 4). The motion asserted there was no homestead exemption in favor of appellant or Davis but, even if appellant was entitled to a $75,000 homestead exemption, there was more than enough equity in the property to allow a significant payment on the

[5] Appellant says she had no interest in D & M Cabinets and no knowledge of the judgment or lien attachment until this proceeding. She views herself as a third party claimant to the real property rather than a judgment debtor. However, she does not dispute that the debt is a community debt incurred during the marriage. For purposes of this appeal, her status does not matter, as no one disputes the trial court's finding that she is entitled to a homestead exemption.

[6] On appeal, appellant does not contend the transfer of her husband's interest to her after creation of the judgment lien immunizes the property from his debt.

Wells Fargo judgment. In an effort to avoid the statutory procedure for a sheriff's sale of the property, the attorney for Wells Fargo attested: "I have been in practice for over eighteen years. Most of my practice involves enforcing claims and judgments and I have requested and participated in numerous sheriff's sales pursuant to execution. Based on my experience with these sheriff's sales, I can and do state that they are very poorly noticed, attract almost no bidders, and are extremely expensive. In particular, very large fees are charged by the sheriff for selling real property and the sales prices at sheriff's sales are, in a word, abysmal. . . . In contrast, a sale by a receiver to enforce a judgment is much more efficient and assets are sold for far higher prices because the receiver can employ brokers and otherwise advertise the sale in a commercially reasonable manner, and obtain a sale according to normal practices in the real estate industry." Counsel requested appointment of a receiver to sell the property, pursuant to the forbearance agreement.

Appellant (in addition to filing a quiet title action) opposed the motion, arguing in part[7] that Wells Fargo could not sell her dwelling without proceeding via the EJL's statutory procedure for selling a dwelling subject to a homestead exemption. Thus, section 704.740 says, "the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article."

Wells Fargo filed a reply, arguing in part that it did not have to follow the procedure for a judicial sale under section 704.740, because it was choosing to proceed under the "alternate" procedure of section 708.620 (see, *ante*, fn. 2), which authorized the court to appoint a receiver to enforce a judgment where it was reasonable to do so.

In February 2008, the trial court granted the motion for a receiver to sell the property, rejecting appellant's claim that the property was her separate property not subject to the lien, and stating in part: "[Appellant] also contends that the property may not be sold unless [Wells Fargo] obtains a court order under CCP section 704.740. [Wells Fargo] is not proceeding under that section. It is proceeding under CCP 708.620 which authorizes a court to appoint a receiver to enforce a judgment. [Wells Fargo] has shown that this procedure is in the best interests of both the judgment creditor and judgment debtor as the receiver will be able to obtain a better price than would be obtained at an execution sale."

---

[7] Both sides raise factual issues (e.g., whether a sale would yield enough to satisfy the liens and exemption) unnecessary for discussion in this opinion.

The court order, dated February 5, 2008, found appellant was entitled to a homestead exemption in the amount of $75,000,[8] and appointed the receiver requested by Wells Fargo, Steve Boschken, "to carry out a sale of the real property." The order said, "Receiver shall sell the Property on the best terms offered, subject to approval by further order of this Court."

## DISCUSSION

An order appointing a receiver is an appealable order. (§ 904.1, subd. (a)(7).)

The court order at issue here does three things: It (1) gives appellant a homestead exemption of $75,000 and (2) appoints a receiver (3) to sell the property without complying with section 704.740 (see, *ante*, fn. 4). Appellant expressly states she does not challenge the appointment of a receiver. The focus of this appeal is on the third point, i.e., whether a judgment creditor, seeking to sell an occupied dwelling to collect on a money judgment, may bypass section 704.740 when the sale is conducted by a receiver. Thus, this appeal does not involve a question of trial court abuse of discretion in appointing/directing a receiver or a mixed question of law and fact (as urged by Wells Fargo); rather, it involves only a question of statutory construction, which we review de novo. (*SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 907 [79 Cal.Rptr.3d 752].)

We shall conclude the trial court erred in authorizing the receiver to sell the property without complying with section 704.740. The plain, unambiguous language of section 704.740 dictates that the judgment creditor must proceed via that statute, regardless of whether the property is to be sold by a sheriff or a receiver. Although the court order also appoints a receiver, which is not in and of itself objectionable, here the motion sought appointment of the receiver for the sole and limited purpose of selling the subject property in avoidance of section 704.740. And although appellant is not aggrieved by the court's finding that she is entitled to a homestead exemption and although her appellate brief expresses satisfaction with that portion of the order, her appeal is from the order in its entirety, and she argues the court failed to make further findings relevant to the homestead (e.g., fair market value of the property and priority of liens), and she asks as her first choice that we reverse the order. We shall therefore reverse the order in its entirety, without prejudice to appellant to reassert her claim for a homestead exemption in the event Wells Fargo pursues a sale of the property following remand.

The dispute between the parties "is one of statutory interpretation. When a court attempts to discern the meaning of a statute, 'it is well settled that we

---

[8] Appellant says the parties stipulated to the homestead exemption. The record is unclear, but it does not matter.

must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citations.]' " (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639–640 [88 Cal.Rptr.3d 859, 200 P.3d 295].)

As indicated (see, *ante*, fn. 4), section 704.740 states: "(a) Except as provided in subdivision (b), *the interest of a natural person in a dwelling may not be sold under this division* [*part 2, title 9, division 2, Enforcement of Money Judgments, sections 695.010 through 709.030*] *to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article* [part 2, title 9, division 2, chapter 4, article 4, Homestead Exemption, sections 704.710 through 704.850]. [¶] (b) If the dwelling is personal property or is real property in which the judgment debtor has a leasehold estate with an unexpired term of less than two years at the time of levy: [¶] (1) A court order for sale is not required and the procedures provided in this article relating to the court order for sale do not apply. [¶] (2) An exemption claim shall be made and determined as provided in Article 2 (commencing with Section 703.510)." (Italics added.)

Section 704.740 first says that "the interest of a natural person in a dwelling may not be sold *under this division* . . . ." (Italics added.) The "division" is part 2, title 9, division 2, which includes section 708.620—the statute relied on by the trial court to appoint the receiver.

Section 704.740 then says, a dwelling may not be sold to enforce a money judgment "except pursuant to a court order for sale obtained under this article . . . ." (§ 704.740, subd. (a).) The "article" referred to is part 2, title 9, division 2, chapter 4, article 4, "Homestead Exemption," sections 704.710 through 704.850. The statute relied on by the trial court to appoint a receiver to sell the dwelling—section 708.620—is not located in article 4 but is rather found in part 2, title 9, division 2, chapter 6, article 7. Read in its entirety, the plain language of section 704.740 contemplates that a receiver may be appointed to sell a dwelling, but the receiver must obtain a court order for sale under article 4.

■ Section 704.740 is part of the homestead laws. "Homestead laws are designed to protect the sanctity of the family home against a loss caused by a forced sale by creditors. . . . The homestead exemption ensures that insolvent debtors and their families are not rendered homeless by virtue of an involuntary sale of the residential property they occupy. Thus, the homestead law is not designed to protect creditors . . . . This strong public policy requires courts to adopt a liberal construction of the law and facts to promote the

beneficial purposes of the homestead legislation to benefit the debtor [and his family]." (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 588 [5 Cal.Rptr.3d 224].) At issue here is the "automatic" homestead exemption (also called a "residential exemption"), which need not be memorialized in a recorded homestead declaration, and which is available when a party has continuously resided in a dwelling from the time that a creditor's lien attaches until a court's determination in a forced sale process that the exemption does not apply. (*Ibid.*) "Where a residential exemption is claimed, the judgment creditor is required to obtain a court order for sale of the real property homestead." (*Id.* at p. 589.)

■ A homestead exemption does not preclude sale of the home but entitles the homesteader to receive the value of the exemption if the property is sold to satisfy a judgment lien. "When there is sufficient equity in the property, it may be sold and the exemption applies to the sales proceeds that are exempt from the claims of certain creditors and can be used by the debtor to acquire another residence." (5 Miller & Starr, Cal. Real Estate (3d ed. 2000) Homesteads, § 13:43, p. 87.)

Compliance with section 704.740 affords the following protections to a person entitled to a homestead exemption: A hearing is held, at which the court determines whether a homestead exemption exists. (§§ 704.770, 704.780.) If the court determines a homestead exemption exists, "the court shall determine the amount of the homestead exemption and the fair market value of the dwelling. The court shall make an order for sale of the dwelling subject to the homestead exemption, unless the court determines that the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment pursuant to Section 704.800. The order for sale of the dwelling subject to the homestead exemption shall specify the amount of the proceeds of the sale that is to be distributed to each person having a lien or encumbrance on the dwelling and shall include the name and address of each such person. . . ." (§ 704.780, subd. (b).) If no bid is received at the sale that exceeds the amount of the homestead exemption plus the amount necessary to satisfy all liens and encumbrances on the property, "the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year." (§ 704.800, subd. (a).) If no bid is received that is 90 percent or more of the fair market value determined by the court, the homestead shall not be sold unless the court, upon motion by the judgment creditor, grants permission to accept the highest bid exceeding the minimum bid or makes a new order for sale of the homestead. (§ 704.800.) When the property is sold, the proceeds are distributed in the following order: (1) to the discharge of liens and encumbrances, (2) to the

judgment debtor[9] in the amount of the homestead exemption, (3) to reimbursement of the levying officer's costs, (4) to the judgment creditor, and (5) to the judgment debtor in the amount remaining. (§ 704.850.)

Wells Fargo thinks section 704.740 (see, *ante*, fn. 4) is too restrictive and should be read to apply only to sheriffs' sales (§ 700.015).[10] According to Wells Fargo, an "alternative" and preferable procedure is for the court to appoint a receiver (§ 708.620; see, *ante*, fn. 2) to sell the property in a "court supervised judicial sale." Wells Fargo says the court can protect the homesteader's rights in a sale by a receiver. We shall reject Wells Fargo's position because section 704.740 is unambiguous and does not make any distinction between sales by sheriffs and sales by receivers.

Some background on the sale of real property to enforce a money judgment is helpful.

"After obtaining a money judgment, the judgment creditor creates a judgment lien by recording an abstract or certified copy of the judgment with the county recorder. (. . . § 697.310, subd. (a).) Subject to certain exceptions, the lien attaches to all real property interests owned by the judgment debtor in that county. (. . . § 697.340, subd. (a).) After obtaining a judgment lien, the creditor must take additional steps to collect on the judgment, and the usual method is to levy on specific property by writ of execution. (Schwartz et al., Cal. Practice Guide, Enforcing Judgments and Debts (The Rutter Group 1992) ¶ 6:300.)" (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1320–1321 [15 Cal.Rptr.2d 38].) A levy in the context of execution on real property is the act by which property to be taken and sold is designated or set aside. (*Id.* at p. 1320.) "The judgment creditor obtains from the county clerk a writ of execution, directing the sheriff or other levying officer to enforce the judgment. (. . . §§ 699.510, 699.520.) The creditor delivers the writ to the levying officer with instructions including a description of the property to be levied upon. (. . . § 687.010, subd. (a)(1).) The officer levies on real property by recording a copy of the writ and a notice of levy with the county recorder. (. . . § 700.015, subd. (a).) The levy creates an execution lien on the property. (. . . § 697.710.) Service of a copy of the writ and notice of levy on the judgment debtor triggers a 120-day grace period during which the debtor may redeem the property from the lien. (. . . § 701.545.) Only after this period expires may the levying officer then proceed to notice the property for sale. (. . . § 701.540 et seq.)" (*Id.* at p. 1321, italics omitted.)

---

[9] We have no need in this appeal to determine who would get the money.

[10] Section 700.015 requires "the levying officer" to follow specified steps, e.g., record the writ of execution, identify third parties with interests in the property, serve notice of levy, etc. (§ 701.510 et seq.)

In addition to sheriffs' sales, sales of property to enforce money judgments may also be performed by receivers. (*People v. Riverside University* (1973) 35 Cal.App.3d 572, 583 [111 Cal.Rptr. 68] (*Riverside*).)

Thus, the general receivership statutes (§ 564 et seq.)[11] apply to the EJL, as stated in section 708.610: "The provisions of Chapter 5 [Receivers] (commencing with Section 564) and Chapter 5a [Undertaking of Persons Handling Private Property or Funds] (commencing with Section 571) of Title 7 [Other Provisional Remedies in Civil Actions] govern the appointment, qualifications, powers, rights, and duties of a receiver appointed under this article." Among these provisions is section 568, which gives the receiver the power "to make transfers, and generally to do such acts respecting the property as the Court may authorize." Also, section 568.5 says, "A receiver may, pursuant to an order of the court, sell real or personal property . . . in the manner prescribed by Article 6 (commencing with Section 701.510) of Chapter 3 of Division 2 of Title 9 [the EJL's provisions on execution sales]. The sale is not final until confirmed by the court." The reference to the EJL was added with the 1982 enactment of the EJL. (Stats. 1982, ch. 497, § 35, p. 2156; see Stats. 1982, ch. 1364, § 2, p. 5070 [enacting EJL].) Before enactment of the EJL, former section 568.5 said the receiver could, pursuant to court order, sell property "in the manner prescribed by law for the sale of such property under execution." (Stats. 1939, ch. 374, § 1, p. 1709.)

■ There are differences between sales by receivers and sales by sheriffs. Thus, "[a] receiver's sale is a judicial sale as distinguished from a sale under execution. [Citation.] In execution sales, the sheriff or marshal acts as a ministerial officer and not as an officer of the court; 'the court is not the vendor' and the officer's authority 'rests in the law and on the writ and does not as in judicial sales emanate from the court.' [Citation.] A receiver, on the other hand, is an agent of the court and the property in his hands is really under the control and continuous supervision of the court. [Citation.] Consequently, *unless regulated by statute*, the court has full power to order the receiver to dispose of property in such a manner as the court may deem to be for the best interest of the parties concerned and the advice of the receiver and his opinion in regard to the value of the property, the manner, time and place of its disposition are entitled to great respect and weight. [Citations.]" (*Riverside, supra*, 35 Cal.App.3d at pp. 583–584, italics added.)

[11] Section 564 provides in part, "(b) A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases: [¶] . . . [¶] (4) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or pursuant to the [EJL] (Title 9 (commencing with Section 680.010)), or after sale of real property pursuant to a decree of foreclosure, during the redemption period, to collect, expend, and disburse rents as directed by the court or otherwise provided by law."

The problem for Wells Fargo is that this appeal does fall within the caveat mentioned by *Riverside* for matters "regulated by statute," i.e., this appeal involves a statute governing homestead exemptions. Moreover, despite the differences between sheriffs' sales and receivers' sales, the receiver statutes contemplate that sales by receivers to enforce judgments will be conducted in accordance with the EJL's provisions on execution sales. (§ 568.5 ["A receiver may, pursuant to an order of the court, sell real or personal property . . . in the manner prescribed by" the EJL's provisions on execution sales.].)

Wells Fargo accepts that a sale of a dwelling is subject to a homestead exemption, regardless of whether the sale is by a receiver or a sheriff. Indeed, Wells Fargo acknowledges that "all the execution procedures discussed by Appellant here are already applicable to judicial sales under CCP section 708.620."

Yet Wells Fargo believes a sale by a receiver offers more flexibility because it is subject to continuous supervision by the court. Wells Fargo says, "receiver sales of real property have long been governed by the notice and sale provisions applicable to execution sales, including the provisions applicable to sales of dwellings. The enabling statutory framework also always anticipated the court's continuing supervision and control of receiver sales. Both, as originally enacted and as modified, Section 568.5 [receiver may, pursuant to court order, sell real property in the manner prescribed by the EJL provisions on execution sales] has consistently provided that any such sales were not final 'until confirmed by the court.' This continuous supervision is the key distinction between an execution sale and a judicial sale through receivership."

Wells Fargo summarizes its position as follows: "In judicially supervised receiver sales, trial courts have broad discretion to fashion appropriate sale orders in view of the court's duty to obtain a result in the best interests of all parties concerned. This discretion includes authority to modify statutory procedures. Long before the enactment of the EJL, trial courts were recognized to have inherent equitable powers to craft sale orders to meet the exigencies of an individual case. The continuous judicial oversight and supervision of receiver sales make them fundamentally different from execution sales, and justifies the greater latitude granted trial courts in fashioning such equitable relief. Appellant's homestead exemption will receive greater protection and oversight in a judicially supervised receiver's sale than is possible under execution sale procedures. Section 704.740 establishes a procedure for limited court involvement in execution sales, which are inherently ministerial. For this reason, sale orders under Section 704.740 must include all determinations relating to all aspects of the execution sale and

homestead exemption in a single document. There is no reason to impose this single document limitation on judicially supervised receiver's sales. The trial court should be allowed to exercise its discretion to control and supervise a receiver's sale in the manner best fitting the circumstances of this case. There is no reason to believe the trial court here will not protect Appellant's homestead rights while supervising the receiver's sale. The same court would be applying the same law to an order for sale under a writ of execution as it will here. It simply makes no sense to limit the court's authority to appoint a receiver under CCP § 708.620 based on concerns about proper protection of homestead rights." Wells Fargo says the trial court has not yet set a procedure for selling the property or determined the sale price or proper distribution of proceeds, but these matters can be dealt with as the case progresses.

■ We reject Wells Fargo's position. Section 704.740 (see, *ante*, fn. 4) unambiguously states that a dwelling subject to a homestead exemption "may not be sold under this division [Enforcement of Money Judgments] to enforce a money judgment except pursuant to a court order for sale obtained under this article [Homestead Exemption]." The statute thus clearly and unambiguously makes a section 704.740 order a requirement for sale of a dwelling subject to a homestead exemption, without differentiation between a sale by a sheriff and a sale by a receiver. Moreover, the EJL chapter on exemptions (pt. 2, tit. 9, div. 2, ch. 4) expressly states the exemptions "apply to all procedures for enforcement of a money judgment" except as otherwise provided by statute. (§ 703.010.)[12] Additionally, the EJL's chapter on execution (pt. 2, tit. 9, div. 2, ch. 3, § 699.010 et seq.) authorizes the court to appoint a receiver *or* order the levying officer to sell property in specified circumstances, with the manner of the sale and the distribution of proceeds to be accomplished pursuant to the same statutory provisions governing execution. (§ 699.070.)

■ Where a statute is clear and unambiguous, there is no call for judicial construction, and we apply the statute as written, unless it leads to an absurd result contrary to the legislative intent. (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977 [4 Cal.Rptr.3d 434] (*Gonzalez*).)

Section 704.740 on its face makes no distinction between sales by sheriffs and receivers, and we see no problem with enforcing the statute as written, i.e., anyone who wants a dwelling sold to enforce a money judgment (which is what Wells Fargo wants to do), where the dwelling may be subject to a

---

[12] Section 703.010 states, "Except as otherwise provided by statute: [¶] (a) The exemptions provided by this chapter or by any other statute apply to all procedures for enforcement of a money judgment. [¶] (b) The exemptions provided by this chapter or by any other statute do not apply if the judgment to be enforced is for the foreclosure of a mortgage, deed of trust, or other lien or encumbrance on the property other than a lien created pursuant to this division or pursuant to Title 6.5 (commencing with Section 481.010) (attachment)."

homestead exemption, must obtain a court order for the sale under the "article" (pt. 2, tit. 9, div. 2, ch. 4, art. 4, Homestead Exemption) specified in section 704.740 (see, *ante*, fn. 4), i.e., provisions governing sale of property subject to a homestead exemption.

Despite the fact that section 704.740 (see, *ante*, fn. 4) on its face is concerned with the interest of the person in the dwelling without regard to who conducts the sale, Wells Fargo advances policy arguments for allowing a receiver's sale to bypass section 704.740. Wells Fargo maintains that the court's broad powers over a sale by a receiver afford a judgment debtor even more protection than section 704.740, and therefore receivers need not and should not be bound by section 704.740. Wells Fargo argues the obvious legislative intent of section 704.740 was to set a minimum threshold for protecting homestead rights by requiring at least a limited judicial review of all dwelling sales and, according to Wells Fargo, this purpose will be better served by a judicially supervised receiver's sale than by the more limited judicial review provided in an execution sale. Wells Fargo also argues that its position advances the public policy of protecting judgment creditors' rights. None of these policy arguments justifies our deviation from the plain meaning of the statutes at issue. These policy arguments "are matters properly resolved on the other side of Tenth Street, in the halls of the Legislature." (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 711 [252 Cal.Rptr. 613].)

Wells Fargo argues we should not apply section 704.740 literally but rather should "harmonize" it with the rest of the EJL, including the EJL provisions authorizing the appointment of receivers to enforce judgments, and hold section 704.740 inapplicable to sales by receivers. However, there is nothing to harmonize. The provision authorizing the appointment of a receiver to enforce a judgment is not inconsistent with the procedure for handling a homestead exemption, which applies regardless of whether the sale is by a sheriff or a receiver. We see no reason why receivers should not be subject to the same restrictions as sheriffs when selling occupied dwellings that may be subject to a homestead exemption.

Even if there were a need to harmonize, we would conclude section 704.740 applies to receivers. Thus, as indicated, the homestead law is not designed to protect creditors and should be liberally construed "to promote the beneficial purposes of the homestead legislation to benefit the debtor [and his family]." (*Amin v. Khazindar, supra*, 112 Cal.App.4th at p. 588.)

On the issue of harmonizing, Wells Fargo relies on the holding of *Gonzalez, supra*, 111 Cal.App.4th 977, that section 704.740's prohibition against the sale of a dwelling without a court order regarding the homestead exemption,

does not trump or negate section 701.680,[13] which makes the sale of property to a third party absolute even if no order was obtained.

However, *Gonzalez* is inapposite. There, the debtor sought to invalidate a sheriff's sale as void on the ground the parcel contained a dwelling subject to a homestead exemption, and therefore the creditor should have proceeded via section 704.740. The appellate court rejected the debtor's argument that noncompliance with section 704.740 could render the sale void and thus "trump" section 701.680.

*Gonzalez* said: " 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . . [¶] But the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citation.]

"It is immediately apparent from an examination of the statutory scheme and words used that (1) division 2, chapter 3 [Execution], of the EJL is all-encompassing—it deals with procedures for enforcement of judgments by writ without exception and (2) section 701.680 [in part 2, title 9, division 2, chapter 3] is crystal clear—it states that execution sales are absolute and may not be set aside 'for any reason' unless the judgment creditor was the purchaser. It is also apparent that (1) division 2, chapter 4 [Exemptions] of the EJL pertains to exemptions rather than procedures for enforcement, (2) the purpose of section 704.740 [in part 2, title 9, division 2, chapter 4] is to provide 'the exclusive procedure for determining real property dwelling exemptions' (18 Cal. Law

---

[13] Section 701.680 states in part: "(a) Except as provided in paragraph (1) of subdivision (c) [sale may be set aside if purchaser is the judgment creditor], a sale of property pursuant to this article is absolute and may not be set aside for any reason. [¶] . . . [¶] (c) If the sale was improper because of irregularities in the proceedings . . . . [¶] . . . [¶] (2) The judgment debtor . . . may recover [from the judgment creditor or levying officer] damages caused by the impropriety."

Revision Com. Rep. (1984) p. 101), and (3) division 2, chapter 4 [Exemptions] of the EJL does not have independent procedures for enforcement of judgments by writ against dwellings akin to division 2, chapter 3 [Execution] other than the limited directive set forth in section 704.740. As such, section 704.740 does not trump or negate section 701.680. It is a companion provision that applies in addition to section 701.680 when a dwelling is to be sold.

"Given that there is no specified consequence in section 704.740 for failure to obtain a court order, the transgression can only be considered an 'irregularity' governed by the all-encompassing remedies in division 2, chapter 3 [Execution], which permit a damages remedy against the judgment creditor or sheriff but forbid setting aside a sale to third party purchasers." (*Gonzalez, supra*, 111 Cal.App.4th at pp. 981–982.)

Additionally, the *Gonzalez* court went on to say the property was not a dwelling subject to a homestead exemption, because the debtor moved onto the property only after the levy. (*Gonzalez, supra*, 111 Cal.App.4th 977, 984.)

Thus, in *Gonzalez*, there was a need to harmonize, because one statute prohibited a sale without the appropriate court order, yet the other statute said a sale to a third party would stand despite failure to obtain the court order. *Gonzalez* quite reasonably concluded the statutes could be harmonized, i.e., a court order was required, but if an innocent third party purchased the property in a sale conducted without the proper court order, the judgment debtor's remedy was limited to damages.

Here, contrary to Wells Fargo's view, we see nothing needing harmonizing. Section 708.620 (see, *ante*, fn. 2) is a general statute in the EJL's part 2, title 9, division 2 (Enforcement of Money Judgments), chapter 6 (Miscellaneous Creditors' Remedies), allowing a court to appoint a receiver to enforce a judgment. Section 704.740 is in chapter 4 (Exemptions) of the same division 2 (Enforcement of Money Judgments), governing the sale of owner-occupied real property subject to a homestead exemption; the statute states, "a dwelling may not be sold under this division [division 2, Enforcement of Money Judgments] to enforce a money judgment except pursuant to a court order for sale obtained under this article . . . ." (§ 704.740.)

 "As a general rule, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. [Citations.] When the two statutes can be reconciled, they must be construed 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' [Citation.]" (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1118 [23 Cal.Rptr.3d 282].)

To construe the general statute as providing an alternative remedy to the specific statute, as urged by Wells Fargo, would be wrong because it would nullify the specific statute's express requirement for a court order for any sale "under this division" (pt. 2, tit. 9, div. 2, Enforcement of Money Judgments)—a division which encompasses both statutes. Thus, the two statutes cannot be harmonized in the manner sought by Wells Fargo. If harmony is needed, it is achieved by our conclusion that a section 704.740 court order is required for sale of a dwelling subject to a homestead exemption, regardless of whether the sale is by a receiver or a sheriff. Thus, the general receivership statutes do not provide an "alternative" remedy allowing judgment creditors to bypass the EJL provisions for handling sales of dwellings subject to a homestead exemption.

Wells Fargo cites *Riverside, supra*, 35 Cal.App.3d 572, which interpreted section 568.5 (court may authorize receiver to sell property in the manner prescribed for execution sales) to mean that "unless the court prescribes a different mode of sale, a receiver, when authorized, must sell property in the manner provided for sales on execution." (*Riverside, supra*, at p. 585.) Wells Fargo thinks this means the court can allow a receiver enforcing a judgment to bypass section 704.740. We disagree. *Riverside* did not involve enforcement of a judgment. (*Riverside*, at p. 580.) It involved the sale of personal property by the receiver of a school under a charitable trust. (*Ibid.*) The appellate court held the trial court had the power to authorize sales by methods other than execution sales, and therefore possessed the power to approve sales so made without prior authorization. (*Id.* at pp. 583–585.) However, *Riverside* predated the 1982 enactment of section 704.740 (see, *ante*, fn. 4), which controls the sale of dwellings to enforce a judgment. Other case law cited by Wells Fargo also predated the enactment of the EJL. (*Olsan v. Comora* (1977) 73 Cal.App.3d 642, 647 [140 Cal.Rptr. 835] [rejected debtor's argument that former § 564, which authorized appointment of receiver after execution is returned unsatisfied, restricted court's equitable jurisdiction to appoint receiver apart from such supplementary proceedings].) Wells Fargo suggests its reliance on *Riverside* finds support in the recent case of *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 930 [76 Cal.Rptr.3d 483, 182 P.3d 1027], which affirmed the principle that the receiver acts as an officer of the court subject to court order. However, *City of Santa Monica* involved a receivership to demolish uninhabitable property due to building code violations; it had nothing to do with the EJL.

Wells Fargo's other cited authorities are also inapposite. Thus, *People v. Stark* (2005) 131 Cal.App.4th 184 [31 Cal.Rptr.3d 669] held the general receivership statutes (§ 564 et seq.) applied to sales of property by receivers pursuant to Penal Code section 186.11, which authorizes the sale of assets of a person convicted of a "white collar" crime of fraud or embezzlement. *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494 [218 P.2d 536] did not

involve enforcement of judgment, but rather a partnership dissolution. The Supreme Court said, "a court in an equity proceeding has the power to change the manner of sale of property in its custody by a receiver appointed by it from that previously prescribed by it in the order directing the sale, and in that connection may make the sale itself although the prior order called for it to be made by the receiver." (*Id.* at p. 499.) The directions regarding the manner of sale were merely procedural instructions, which the court retained jurisdiction to change. (*Ibid.*) "The receiver is a mere agent and the property in his hands is really under the control and continuous supervision of the court. [Citations.]" (*Ibid.*) We see nothing in Wells Fargo's cited cases allowing a receiver to bypass the EJL's provisions governing sale of a dwelling subject to a homestead exemption.

At oral argument in this court, Wells Fargo argued the receiver *would* have to comply with section 704.740 (see, *ante*, fn. 4), governing sale of a dwelling subject to a homestead exemption. This position cannot be reconciled with the court order, attached to this opinion as an appendix, which ordered in part, "That the Receiver is hereby authorized and directed to immediately employ a licensed and qualified real estate broker on customary terms to market the Property. Receiver shall sell the Property on the best terms offered, subject to approval by further order of this Court." This portion of the order bypassed the statutory procedure under the EJL requiring the trial court to determine the fair market value of the dwelling. (§ 704.780, subd. (b).) Wells Fargo's position is not convincing.

Our conclusion that Wells Fargo must comply with section 704.740 is not altered by the contract between Wells Fargo and Davis. The forbearance agreement said Wells Fargo had the right to appointment of a receiver to enforce the judgment. It said nothing about homestead exemptions and thus does not allow Wells Fargo to bypass section 704.740 (even assuming the statute is subject to waiver and further assuming for the sake of argument that Davis's waiver would be binding on appellant).

We need not address appellant's argument, raised for the first time in her reply brief, that the appointment of a receiver under section 708.610 is improper where the interests of a third party claimant are at issue. Besides failing to raise it in her opening brief, the argument is inconsistent with her admission that she does not challenge the appointment of a receiver. Since we shall reverse the order, we need not address appellant's contention in her reply brief that the trial court erred in entering the formal order, which was objectionable to appellant, at a time when her counsel was unavailable.

■ We conclude the trial court erred in issuing the order allowing the sale of the real property by a receiver without compliance with section

704.740. We emphasize this appeal does not require us to, and we do not, make any holding regarding other aspects of a receiver's enforcement of a judgment.

As indicated, the court order not only authorizes the sale but also appoints the receiver. The mere appointment of a receiver is not improper. However, Wells Fargo moved for appointment of a receiver for the express and limited purpose of selling the subject property without complying with section 704.740. Accordingly, we shall reverse the order in its entirety.

## DISPOSITION

The February 5, 2008, "Order Appointing Receiver to Enforce Judgment" is reversed in its entirety, without prejudice to appellant to reassert her claim for a homestead exemption in the event Wells Fargo pursues a sale of the property following remand. Appellant shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

Scotland, P. J., and Raye, J., concurred.

# APPENDIX

Kevin P. Whiteford, CSBN 142916
SERLIN & WHITEFORD, LLP
813 F Street, 2nd Floor
Sacramento, CA 95814
Telephone: (916) 446-0790
Facsimile: (916) 446-0791

FILED
ENDORSED
FEB - 5 2008
By_____
S. Tingle

Attorneys for Plaintiff
WELLS FARGO FINANCIAL LEASING, INC.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SACRAMENTO

WELLS FARGO FINANCIAL
LEASING, INC.,

 Plaintiff,

vs.

D&M CABINETS, et al.

 Defendants.

CASE NO. 03AS05173

**ORDER APPOINTING RECEIVER TO ENFORCE JUDGMENT**

DATE: January 10, 2008
TIME: 2:00 p.m.
DEPT: 53

Wells Fargo Financial Leasing, Inc.'s motion for appointment of a receiver to enforce the judgment in the above-captioned action was duly noticed and set for hearing on January 10, 2008. On January 9, 2008, the Court issued its tentative ruling, stating:

> Plaintiff's motion for appointment of a receiver to enforce the judgment pursuant to CCP 708.620 and 564(b)(3) and sell the real property located at 1168 Athena Avenue is granted.

> Plaintiff recorded an abstract of judgment on May 11, 2004 which had the effect of creating a judgment lien against real property owned by defendant Davis.

> Wolfe-Davis, former spouse of Davis and not a party to this action, opposes sale of the property contending it is her separate property and was a gift from her mother, Gates. The evidence is to the contrary. The property was deeded to Davis and Wolfe-Davis as husband and wife by Gates on November 29, 2001. The evidence shows that the Davies's paid Gates $80,049 for the property.

**EXHIBIT A**

0002 G

## APPENDIX

On March 14, 2002, October 22, 2002, and August 26, 2004 they executed deeds of trust as a married couple and used the proceeds to pay community debts. On August 24, 2004, Davis deeded his interest to Wolf-Davis and the two of them as a married couple, also executed a deed of trust to Bank of America. Wolfe-Davis's interest in the real property is subject to existing liens.

Wolfe-Davis also contends the debt was Davis's separate debt. The Court disagrees. The evidence reflects that the debt was incurred during the marriage, which makes it a community debt for which both spouses are responsible.

Wolfe-Davis cannot defeat plaintiff's rights as judgment creditor by contending she was separated from Davis in 2001 while at the same time incurring debts secured by the real property with him as a married couple. Nor can she defeat plaintiff's rights by stipulating with Davis in the marital dissolution agreement of August 2005 that the property is her separate property. It may be her separate property, but it is still subject to judgment liens.

Wolfe-Davis also contends that the property may not be sold unless plaintiff obtains a court order under CCP section 704.740. Plaintiff is not proceeding under that section. It is proceeding under CCP 708.620 which authorizes a court to appoint a receiver to enforce a judgment. Plaintiff has shown that this procedure is in the best interests of both the judgment creditor and judgment debtor as the receiver will be able to obtain a better price than would be obtained at an execution sale.

The Court will sign the formal order submitted with the motion.

Victoria Wolfe-Davis requested a hearing, which was held January 10, 2008.

The Court, having considered the arguments of counsel and the papers filed in support and opposition to Judgment Creditor Wells Fargo Financial Leasing, Inc. ("Creditor") for appointment of a receiver to carry out execution sale, and good cause appearing,

IT IS HEREBY ORDERED:

1. The Court affirms its tentative ruling, and adds a finding in favor of Victoria Wolfe-Davis on her claim to a homestead exemption;

2. The motion is in all respects GRANTED;

3. Upon the filing of his oath, and a bond in the amount of fifty thousand dollars ($50,000.00), Steve Boschken ("Receiver") is appointed receiver to carry out a sale of the real property commonly known as 1168 Athena Avenue, Sacramento, California (the "Property"), and more fully described in Exhibit A hereto, which is incorporated herein by this reference.

4. That after so qualifying, said Receiver and his agents are authorized to enter on and into the Property upon reasonable notice to the occupants thereof from time to time for purposes of showing the Property to prospective buyers.

000221

ORDER APPOINTING RECEIVER
TO ENFORCE JUDGMENT

2

Wells Fargo Financial Leasing, Inc. v. D&M Cabinets, et al.
Case Number: 03AS05173

5. That the Receiver is hereby authorized to employ servants, agents, and brokers and to pay therefor at ordinary and usual rates and prices out of funds that shall come into his possession as such Receiver; and that no risk or obligation so incurred shall be the personal risk or obligation of said Receiver, but shall be a risk or obligation of the receivership estate.

6. That the Receiver is hereby authorized and directed to immediately employ a licensed and qualified real estate broker on customary terms to market the Property. Receiver shall sell the Property on the best terms offered, subject to approval by further order of this Court.

7. IT IS FURTHER ORDERED THAT, the Receiver shall be authorized to prepare periodic interim statements reflecting the Receiver's fees and administrative costs and expenses incurred for said period in the operation and administration of the receivership estate herein. Upon completion of an interim statement, and mailing said statement to the parties' respective attorneys of record or any other designated person or agent, the Receiver may pay from receivership estate funds, if any, the amount of said statement. Despite the periodic payment of Receiver's fees and administrative expenses, said fees and expenses shall be submitted to the Court, for its approval and confirmation, in the form of either a noticed interim request for fees, stipulation among the parties, or Receiver's final account and report.

8. IT IS FURTHER ORDERED that, in addition to all of the powers herein above set forth, the Receiver is hereby vested with all of the general powers of receivers in cases of this kind, subject to the direction of this Court, and said Receiver shall, from time to time, or when directed by the Court, render to the Court reports of the proceedings and accountings with respect to all of the acts and things done by him and all monies received and expended by him or his agents.

9. IT IS FURTHER ORDERED that, the Receiver and the parties to this action may, from time to time and upon due notice to the parties entitled thereto, petition this Court for instructions in pursuance of this order and further orders this Court may hereafter make.

10. IT IS FURTHER ORDERED that Victoria Wolfe-Davis is entitled to a homestead exemption in the amount of $75,000.00.

DATED: FEB - 5 2006

LOREN E. McMASTER
JUDGE OF THE SUPERIOR COURT

Z:\Active File\WELLS FARGO LEASING\D&M Cabinets\Court Docs\receiver.motion\receiver.order.2.wpd

000222

ORDER APPOINTING RECEIVER
TO ENFORCE JUDGMENT

3

*Wells Fargo Financial Leasing, Inc. v. D&M Cabinets, et al.*
Case Number: 03AS05173