Filed 12/18/20  Pillet v. Kendrick CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANDREW PILLET, <br><br> Plaintiff and Appellant, <br> v. <br><br> CLAIRE KENDRICK et al., <br><br> Defendants and Respondents. | A157681, A158217 <br><br> (City & County of San Francisco No. CGC-15-549693) |

Andrew Pillet (Pillet) appeals from judgments entered against him in a fraudulent transfer action he brought against Stephen H. Kendrick (Kendrick), Kendrick's daughters Claire, Rosemary, and Katharine, and Juniper Twelve LLC.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2005, Pillet obtained a civil judgment against Kendrick in the amount of $995,945 plus attorney fees and costs and post-judgment interest. The following year, he recorded an abstract of judgment for $994,945 in El Dorado County, where Kendrick owned a real property (the Property), and

_____

[1]     Stephen H. Kendrick is deceased and his estate was not substituted in as a party.  Juniper Twelve LLC is also not a party to this appeal.  Thus, the respondents in this appeal are Claire, Rosemary, and Katharine Kendrick.

1

obtained a lien against the Property.  At the time Pillet recorded his abstract of judgment, the Property was already encumbered by two senior deeds of trust securing loans totaling $1,802,500.  In 2007, Pillet renewed his judgment in the amount of $2,090,324, consisting of the original $994,945 plus attorney fees and costs and post-judgment interest.  In 2009, he recorded an amended abstract of judgment for $2,090,324.  Pillet's lien remained in third priority position behind the two senior deeds of trust.

Meanwhile, Kendrick had entered into a business transaction with an entity known as Fourth Third, LLC (Fourth Third) and owed the entity $2,500,000.  On January 13, 2012, Fourth Third demanded payment and informed Kendrick of its intent to file a lawsuit unless payment was made by January 18, 2012.  Kendrick did not make the payment; instead, on January 18, 2012, he transferred title of the Property—which was the only asset he owned as of that date—to his daughters Claire, Rosemary, and Katharine (the Kendrick Daughters) as a gift, without payment or consideration.[2]  In May 2014, the Kendrick Daughters transferred title of the Property to Juniper Twelve LLC (Juniper Twelve), an entity owned and controlled by Kendrick.  According to Pillet, the value of the Property at the time of the 2014 transfer was $3,900,000—enough to satisfy all three liens.  Through both transfers, the Property remained subject to all three liens, and none of the lienholders, including Pillet, took any action to force a sale of the Property.

On December 31, 2015, Pillet filed the instant action against Kendrick, the Kendrick Daughters, and Juniper Twelve seeking to set aside the 2012 and 2014 transfers of the Property.  Pillet also renewed his 2005 judgment

---

[2]     Fourth Third filed a lawsuit against Kendrick on January 19, 2012 and obtained a $2,900,000 judgment against him.

2

against Kendrick and recorded a third abstract of judgment. By the time Pillet filed the instant action, the first and second lien positions were held by The Evergreen Advantage, LLC (Evergreen) as successor in interest to the first and second trustee interests. Juniper Twelve eventually defaulted on loans secured by Evergreen's trust deeds, and Evergreen foreclosed on the Property in 2017, thereby extinguishing Pillet's and Juniper Twelve's interests in the Property.

On April 2, 2018, Pillet filed the operative complaint alleging two causes of action for fraudulent conveyance (Civ. Code, §§ 3439.04, 3439.05) and causes of action for declaratory relief and resulting trust. He alleged Kendrick conveyed the Property to his daughters in 2012 after Fourth Third, to whom Kendrick owed $2,500,000, threatened litigation. He alleged Kendrick, his daughters, and Juniper Twelve conducted the 2012 and 2014 transfers "with the intention of hindering, delaying and defrauding [Pillet]" and to "make the [P]roperty difficult, expensive, and cumbersome to enforce the Judgment against the same." Pillet asserted the Property should be sold and that "[u]pon the sale, the court should direct that the net sales proceeds, after payment of valid liens and encumbrances, costs of sale, and other charges, be paid and that all remaining funds be remitted to Plaintiff." Pillet requested various remedies including "striking the conveyances" and declaring them "null and void," a declaration "that Kendrick was at all times and is the owner of the Property," and an order restraining defendants from engaging in any further transfers.

On December 11, 2018, after Kendrick's death, the remaining defendants—the Kendrick Daughters and Juniper Twelve (together, Defendants)—moved for summary judgment, asserting Pillet could not show he was damaged by the 2012 and 2014 transfers because a transferee of a

3

real property takes title to the property subject to any existing liens; thus, the Property remained subject to Pillet's lien through the transfers and the transfers had no effect on Pillet's lien. Defendants also asserted Pillet's causes of action for declaratory relief and resulting trust were "wholly dependent on the Fraudulent Transfer Causes of Action and should also be summarily adjudicated." Pillet opposed the motion asserting there was a disputed issue of material fact regarding the validity of his abstracts and that he was entitled to remedies including a declaration that the transfers were void and damages under the Uniform Fraudulent Transfers Act (UFTA).

The trial court denied the motion for summary judgment as to Juniper Twelve on the basis that Juniper Twelve had been suspended by the State. The court granted summary judgment in favor of the Kendrick Daughters, stating they "shifted their burden to show that the [P]roperty was transferred to them at the time a recorded Abstract of Judgment was on file, and that Plaintiff failed to show any harm by the transfer. Plaintiff failed to establish any material triable issues of fact. The Court also notes that the relief Plaintiff seeks to obtain in this action against these defendants appears to be impossible as they no longer have any interest in the [P]roperty; the [P]roperty was foreclosed upon; the foreclosing entity is not a party to this action." Pillet appealed from the summary judgment.

Thereafter, Pillet obtained a default against Juniper Twelve and proceeded by way of a default "prove-up" hearing as to Juniper Twelve. After the hearing, the trial court entered judgment in favor of Juniper Twelve on the basis that Pillet had a "security interest against [the Property] evidenced by . . . the several abstracts of judgments that he [filed] as a lien against this property." Noting that a judgment lien "cannot be avoided by transferring real property," the court determined the Property "was at all times since 2005

4

subject to [Pillet's] valid lien interest and, therefore, Kendrick's transfers of the property did not constitute a transfer of an asset within the meaning of the UFTA."  "The UFTA only provides a remedy to a creditor for the transfer of an interest when the transfer is made to prevent a creditor from reaching the interest.  [Citations.]"  The court stated Pillet "did not execute on this lien that he had created 11 years before the foreclosure sale" and "cannot obtain relief under the UFTA because he cannot establish injury which is an essential claim under the UFTA."  "Therefore, the Court orders . . . [that] plaintiff take nothing on his first and second causes of actions.  Declaratory relief is denied and the trust is denied."  Pillet appealed from the judgment and filed an unopposed motion in our court to consolidate the two appeals, which we granted.

## DISCUSSION

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant meets its burden of showing a cause of action has no merit by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  Once the defendant meets its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists.  (Code Civ. Proc., § 437c, subd. (p)(2).)  On appeal, we exercise our independent judgment, deciding whether under the undisputed facts the plaintiff's claim cannot be established or there is a complete defense.  (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 860.)  Here, we

5

conclude the trial court properly granted judgment in favor of Defendants as Pillet cannot show he was injured by the 2012 and 2014 transfers.[3]

The UFTA, former Civil Code, section 3439, *et seq.*,[4] " 'declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims,' and its purpose 'is primarily to protect unsecured creditors against transfers and obligations injurious to their rights.' (Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.01, pp. 272, 273; accord, *Mejia v. Reed* (2003) 31 Cal.4th 657, 664.)" (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1235.) "The UFTA is remedial legislation [citation] designed to protect creditors by authorizing them to set aside transfers of property by which debtors try to avoid paying debts by putting assets beyond creditors' reach [citations]." (*Ibid.*) The plaintiff to a fraudulent transfer cause of action bears the burden of

---

[3]    Pillet asserts the trial court's summary judgment was essentially a judgment on the pleadings because defendants conceded the truth of all material allegations in the complaint.  He suggests this court should therefore review the summary judgment as if it were a judgment on the pleadings and determine in the first instance whether he should be granted leave to amend. We decline to do so.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [" 'issues not raised in the trial court cannot be raised for the first time on appeal' "].)  In any event, Pillet does not explain how he would be able to amend his complaint to state a valid claim.  (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [on appeal from judgment on the pleadings, the plaintiff has the burden of showing a reasonable possibility of curing the defect with an amendment].)

[4]    Effective January 1, 2016 the UFTA was superseded by the Uniform Voidable Transactions Act with respect to transfers made on or after the effective date.  (Civ. Code, § 3439.14, subd. (a).)  Because the transactions at issue in this case occurred prior to 2016, the UFTA applies.  All undesignated statutory references are to the Civil Code, and all references to the Civil Code sections of the UFTA are to the statutes that were in effect at the time of the transfers.

establishing: (1) he has a "creditor's claim," i.e., a "right to payment" (§ 3439.01, subd. (b)); (2) there was a "transfer" of an "asset" (§ 3439.01, subds. (a), (m)); (3) the transfer was conducted "[w]ith actual intent to hinder, delay, or defraud" a creditor (§ 3439.04, subd. (a)); (4) the plaintiff was harmed by the transfer; and (5) the defendant's conduct was a substantial factor in causing the harm. (§§ 3439.04, subd. (a)(1), (c), 3439.05; *Dollar Trees Stores, Inc. v. Toyama Partners LLC* (2012) 875 F.Supp.2d 1058, 1079.)

"A well-established principle of the law of fraudulent transfers is '[that a transfer] may be attacked *only by one who is injured thereby*. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond his reach property he otherwise would be able to subject to the payment of his debt.' [Citations.]" (*Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80 (*Mehrtash*), italics added.) In *Mehrtash*, the Court of Appeal held the plaintiff-creditor failed to show injury where the fraudulently transferred property was heavily mortgaged and there was no evidence "the value of the property could support any net recovery for [the plaintiff] in the event the conveyance were set aside" and the property were sold. (*Id.* at pp. 81-82; *Fid. Nat'l Title. Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 864 [creditor had no fraudulent transfer claim where he failed to show he was injured by the transfer].)

Here, assuming the 2012 and 2014 transfers were fraudulent, we conclude Pillet cannot show he was injured by the transfers because he held a judgment lien on the Property at all relevant times; thus, he had a secured interest in the Property that remained in effect through both of the transfers. "Under California's judgment lien law, a judgment creditor's recordation of

7

an abstract of judgment creates a judgment lien that attaches to all real property situated in the county in which the judgment is recorded and that otherwise is subject to enforcement of the money judgment against the debtor." (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 64-65.)  After obtaining a judgment, a judgment creditor may prepare an abstract of judgment, which can then be recorded in any county in which a debtor owns a real property.  (*Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 69.)  Once recorded, the abstract "attaches to" the property and becomes a judgment lien, (*ibid*.), and the judgment creditor thereafter has the right and ability to execute the lien and foreclose on the property as a means of securing payment of the judgment debt (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 651).

Under Code of Civil Procedure section 697.390 subdivision (a), when a real property that is subject to a judgment lien is transferred before the lien is satisfied or extinguished, the property "remains subject to a judgment lien . . . in the same amount as if the [property] had not been transferred." Under Code of Civil Procedure section 695.070, the judgment lien may be enforced against the property after the transfer "in the same manner and to the same extent as if there had been no transfer, even after the death of the judgment debtor.  (§ 695.070.)" (*Dieden v. Schmidt, supra,* 104 Cal.App.4th at p. 651.)  Thus, judgment liens cannot be avoided by transferring real property, and when transferees take title to a Property, they do so "subject" to any lien interests that exist at the time of transfer.  (*Ibid*.; *Federal Deposit Ins. Corp. v. Charlton* (1993) 17 Cal.App.4th 1066, 1069 [transferees are charged with constructive knowledge of any liens and take title to the property subject to the liens].)

Here, Pillet obtained a judgment lien against the Property in 2006 and the lien was enforceable against the Property at all times, until it was satisfied or extinguished. Because a lien survives any transfers in title (Code Civ. Proc., § 697.390), the Property remained subject to Pillet's lien through the 2012 and 2014 transfers in the same amount as if the Property had never been transferred. Thus, when the Kendrick Daughters and Juniper Twelve took title to the Property in 2012 and 2014 respectively, they did so subject to all liens—Pillet's lien and the two senior deeds of trust—that existed at the time of the transfers. Pillet argues he was aggrieved because the transfers made it "difficult, expensive, and cumbersome" for him to enforce the Judgment" and placed a "cloud" on title, thereby making the Property "further judgment-proof." The transfers, however, did not affect Pillet's ability to execute on the lien in any way; rather, he had the right to do so at all times.[5] As noted, the stated Legislative purpose of the UFTA is " 'to protect *unsecured creditors* against transfers and obligations injurious to their rights.' (Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.01, pp. 272, 273.)" (*Renda v. Nevarez, supra*, 223 Cal.App.4th at p. 1235, italics added.) Here, Pillet had *a secured interest* in the Property at all relevant times (i.e., he was not an "unsecured creditor"), and his interest was not affected by the 2012 and 2014 transfers.

Pillet argues the trial court erred in "assum[ing]" he had a valid judgment lien against the Property through the 2012 and 2014 transfers

---

[5] The record does not reveal why Pillet did not execute on his lien. He alleges the value of the Property significantly increased between 2012 and 2014. As he was in third priority position after two senior deeds of trust totaling $1,802,500, perhaps the equity in the Property pre-2014 was insufficient to result in any net recovery for him. It is unclear, however, why he did not attempt to execute on his lien in 2014 when there was apparently enough equity to satisfy all three liens.

because "there were . . . disputed issues of material fact concerning whether Pillet's liens were valid." It appears his argument is that because the abstracts his former attorney prepared and filed were defective, his liens were void as a matter of law, as if they had never existed, and thus the 2012 and 2014 transfers were not made "subject to" his liens. Defendants respond that Pillet is unfairly "attempting to capitalize" on what he perceives as mistakes made by his former attorney, and that none of the alleged "defects" "recently discovered" by Pillet affect the validity of his judgment lien. We agree with Defendants that the purported defects did not render Pillet's judgment lien void.

Pillet asserts his 2006 abstract was defective because it was not certified by the court clerk, and that his 2009 abstract was defective because it did not include Kendrick's social security information and the address at which he was served. Section 674 subdivision (a)(6), however, provides that the last four digits of the debtor's social security number must be provided only "if . . . known to the judgment creditor." Here, Pillet satisfied this requirement by checking the box on the abstract form stating the social security number was "unknown."[6] Further, section 674 subdivision (a)(3) provides the abstract must also include the debtor's first and last name and "last known address and the address at which the summons was either personally served or mailed to the . . . debtor or the . . . debtor's attorney of record." The 2009 abstract provides Kendrick's first and last name and lists

---

[6]     Pillet submitted a declaration to the trial court stating he actually knew Kendrick's social security information and his attorney therefore should have included it in the abstract. Under section 674 subdivision (b), however, Pillet was authorized to amend his abstract at any time to include the social security information, and the amended abstract would have been assigned "priority as of the date of recordation of the original abstract of judgment."

10

an address as his last known address. Other documents in the record show that this address is the same address at which Kendrick was served with the summons. Thus, on its face, the 2009 abstract satisfied the requirements set forth in section 674.

We further note that Pillet acknowledged below that he recorded multiple abstracts of judgment that appeared on the Property title reports and that his abstracts likewise appeared on the Grantor/Grantee Index in El Dorado County. There was no indication that anyone had ever questioned or attacked the validity of Pillet's lien or that Pillet made any attempts to execute on his lien and was unable to do so due to the purported defects. There was also no dispute that Defendants had actual or constructive knowledge of all existing liens on the Property, including Pillet's lien, and that they took title to the Property subject to those liens. We conclude, based on the record before us, that the 2009 abstract was not defective or void and affirm the trial court's implied finding that there were no disputed issues of material fact relating to the validity of Pillet's judgment lien.

In sum, we conclude the trial court properly granted judgment in favor of Defendants on the grounds that there were no disputed issues of material fact and the transfers did not cause injury to Pillet.[7]

---

[7] The trial court granted judgment in favor of Defendants for the additional reason that Pillet could not prove another element of the UFTA—i.e., that the 2012 and 2014 transfers constituted transfers of an "asset" as defined by the UFTA. (§ 3439.01, subd. (a) [defining "asset" as property that is *not encumbered by a valid lien*].) The parties raise various arguments relating to whether the court properly determined that the Property—which was encumbered by a valid lien—was an "asset" whose transfer was protected by the UFTA. In light of our conclusion that the court properly entered judgment for Defendants for other reasons, we will not address Pillet's arguments relating to the court's additional/alternate reason for granting judgment in favor of Defendants.

**DISPOSITION**

The summary judgment in favor of the Kendrick Daughters and judgment in favor of Juniper Twelve are affirmed. Respondents Claire, Rosemary, and Katharine Kendrick shall recover their costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Siggins, P.J.


_____
Fujisaki, J.

*A157681, A158217/Pillet v. Kendrick*

13