[L. A. No. 16302.   In Bank.—July 24, 1939.]

CHARLES C. L. LESLIE et al., Plaintiffs; CATHERINE L. LESLIE, Appellant, v. FEDERAL FINANCE COMPANY, INC. (a Corporation), Respondent.

74

Olson & Ahlport, Olson & Olson and Robert Clifton for Appellant.

Forgy, Reinhaus & Forgy and A. M. Bradley for Respondent.

EDMONDS, J.—Appellant, Catherine L. Leslie who, with her husband, Charles C. L. Leslie brought this action to impose a trust upon property owned of record by respondent, challenges the correctness of the trial court's action in enter-

ing a final decree quieting respondent's title to it. The principal question presented for decision concerns the power of the superior court to extend the time for the performance of an interlocutory decree entered by consent of the parties.

In 1932, Catherine and Charles Leslie executed a deed of trust upon a walnut and citrus fruit ranch owned by them to secure, among other obligations, a note for $45,870 payable to the respondent. Subsequently, Mr. Leslie's interest in the property was acquired by a judgment creditor through proceedings under execution. Later in 1932, upon default in the performance of the trustors' obligations, the property was sold by the trustee under the power of sale reserved in the deed of trust. At this sale, upon a bid of $56,000, the respondent became the purchaser. Immediately following this sale, the Leslies transferred to the respondent farm implements and ranch equipment of an alleged value of $10,000.

In 1935, appellant and her husband brought the present suit in equity alleging that the respondent is a trustee of the real and personal property for their use and benefit. The purpose of the action is to compel a reconveyance of the property, secure an accounting of the income derived from its use, and, in the meantime, prohibit the respondent from transferring the property.

The complaint alleges that over a period of more than a year preceding the trustee's sale, in numerous conversations, J. A. George, active manager, vice-president, secretary and director of the respondent corporation, agreed with Mr. and Mrs. Leslie as follows: For the purpose of clearing title to the real property so that respondent's loan could be refinanced and plaintiffs' equity protected, the finance company would cause the property to be sold under the power of sale contained in the trust deed and would purchase it at the trustee's sale. The Leslies were then to apply to the Federal Land Bank of Berkeley, California, for a substantial loan which would be secured by a first mortgage on the property. The amount obtained by this loan would be paid to and accepted by the respondent in reduction of their indebtedness to it. They were to remain in possession of and operate the ranch, the net proceeds of operation to be paid to the respondent and applied toward the payment of their indebtedness.

Other allegations are that after the trustee's sale further conversations were had in which it was agreed that Mr. and

Mrs. Leslie would transfer to the respondent all farm implements and equipment used in the operation and maintenance of the ranch, which personal property was to be returned to them when the indebtedness secured by the trust deed should be refinanced. It is also alleged that a tentative commitment from the Federal Land Bank of Berkeley for a loan of $32,500 on the property was rejected by the respondent corporation; that since respondent had obtained title to the property under the trustee's deed, it had received net profits from the property in excess of $44,000, which it had refused to apply in reduction of the indebtedness; and that the aggregate of this profit and the loan agreed to by the Federal Land Bank is more than enough to discharge all amounts owing to the respondent.

Respondent joined issue denying the allegations of the complaint respecting the oral agreement and the case went to trial in June, 1936. Following the introduction of the evidence presented on behalf of Mr. and Mrs. Leslie, the finance company moved for a nonsuit, which motion was denied. Thereupon the parties stipulated for the entry of an interlocutory decree.

In substance, this decree gave Mr. and Mrs. Leslie the right to purchase the ranch, including the farm tools and equipment, "at any time on or before the 10th day of December, 1936", for approximately $58,000 plus interest at 8 per cent, costs of litigation including respondent's attorney's fees and costs of maintaining and operating the ranch less deduction of net income from operations. Any dispute concerning the purchase price was required to be determined by the court on motion. The finance company was given the right to remain in possession to manage and operate the property until Mr. and Mrs. Leslie should exercise their right to buy, and upon payment of the purchase price, respondent was required to "execute to the plaintiffs, or their nominee, a grant deed to the real property hereinbefore referred to, free and clear of all liens and encumbrances made, done, or suffered by the defendant as of the date of purchase by the defendant of said real property at foreclosure sale of deed of trust but without covenant or warranty expressed or implied, the defendant being only required to convey to the plaintiffs the title to the real property which it acquired as purchaser under foreclosure of said deed of trust". The decree also required Mr. and

Mrs. Leslie to pay the purchase price to the Orange County Title Company in Santa Ana, which was to pay it over to the respondent upon receiving the instruments of title to the property, after which they would be entitled to a final decree confirming their title to the real and personal property. However, the decree also provided that if "said moneys shall not have been received by said Orange County Title Company for the unconditional use of the defendant as provided in this decree on or before" the 10th day of December, 1936, "then the Court shall enter its final decree quieting title in the said defendant"; and "if said plaintiffs shall fail to make such payments as herein provided to be made by the plaintiffs to the defendant for the purchase of said property, then immediately after the time limited by this interlocutory decree, to wit, the 11th day of December, 1936, the defendant shall be entitled to a final decree quieting title to said real and personal property in said defendant. . . . "

Shortly after the entry of this decree Charles C. L. Leslie assigned to his wife all of his rights thereunder, and on December 18, 1936, the required payment not having been made, respondent moved the court for entry of a final decree quieting title in it. By affidavit and testimony presented on that day and at a subsequent hearing held December 21st, the following facts were shown:

On December 7th counsel for respondent advised appellant that the total purchase price for the property, as computed by the respondent, in accordance with the terms of the interlocutory decree, would be $55,259.28 as of December 10th. Appellant had then interested one J. Roy Smith in buying the property, and late in the afternoon of December 10th Smith deposited $56,000 with the Orange County Title Company, for the account of the respondent, under escrow instructions which required the issuance of a policy of title insurance to Smith and his wife as a condition precedent to payment of the required amount to the respondent. Smith also entered into a written contract of purchase with appellant by which he agreed to buy the property for $68,000. This amount was to be paid by the $56,000 then on deposit and $12,000 to be deposited with the title company within 30 days.

During the morning of December 11th, counsel for the respondent telephoned to the title company and inquired whether there was any money on deposit with that company

which it would pay to the respondent upon delivery by it of the instruments of title required by the interlocutory decree. It was informed that the money was on deposit but could not be paid out at that time. Later the same day respondent made a tender of the required deeds and assignments to the title company, and the latter refused payment upon the ground that the escrow instructions called for the issuance of a certificate of title to Smith which would require a title search and also required an additional deposit of $12,000 to be made by him. When a title search was completed on December 18th, the escrow holder stated that to clear the title a quitclaim deed and a dismissal of certain litigation would have to be obtained. There was some question also concerning the necessity for a release by respondent of a crop mortgage on the property.

However, in the course of the hearing, counsel for appellant stated that Smith had agreed to change the escrow instructions to permit an immediate and unconditional release from the escrow of the amount required to pay the respondent's demand in full. Mr. Smith later took the witness stand and confirmed this offer. The respondent, however, refused to complete the transaction.

Upon these facts the court found that since appellant had not complied strictly with the terms of the interlocutory decree, it had no power to compel appellant to accept the tender after the expiration of the time limited in the interlocutory decree. The motion was thereupon granted and a final decree quieting respondent's title to the property was later entered.

The appellant urges that the trial court interpreted its equity powers too strictly, and in the absence of a showing that respondent was prejudiced by the short delay, the court had the right, which it should have exercised, to compel respondent to accept the money tendered to it and complete the transaction, thus relieving appellant against a forfeiture. This contention must be sustained. It is provided in section 3369 of the Civil Code that "neither specific nor preventive relief can be granted to enforce a penalty or a forfeiture in any case". Section 3275 of the same code provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be re-

lieved therefrom, upon making full compensation to the other party, except in a case of grossly negligent, willful, or fraudulent breach of duty.'' These sections have been applied in numerous cases.

Thus, in *Hopkins* v. *Woodward,* 216 Cal. 619 [15 Pac. (2d) 499], the plaintiff licensed the defendant to produce and stage a play. Due to the illness of an actor the defendant was unable to commence performances on the date specified in the contract and plaintiff brought suit to terminate the license for breach of its provisions. The defendant showed that he was ready to produce the play a week after the time agreed and offered to compensate plaintiff for the delay. The court held that since the injury caused by the delay was compensable and the plaintiff had not been negligent, section 3275 of the Civil Code would not permit a forfeiture of the plaintiff's license, even though the contract expressly provided that his rights should terminate upon a breach of its provisions.

The same equitable doctrine was applied in *Ebbert* v. *Mercantile Trust Co.,* 213 Cal. 496 [2 Pac. (2d) 776]. There the vendee of real property gave notes secured by deeds of trust on the property as payment on the purchase price. These notes contained a provision that they should become ''null and void as to the balance of payments'' in the event the vendor failed to perform a contract to care for the property. The vendee brought suit to cancel the notes and deeds of trust upon the ground that the vendor had not performed his contract. It was held that since there was nothing to show that the plaintiff could not be compensated in damages for the vendor's default, the provisions of the Civil Code which have been referred to prevented a forfeiture. Said the court: ''Moreover, the action is in equity, to cancel the note and deed of trust. The settled doctrine not only prevents a court of equity from enforcing a forfeiture (Cal. Civ. Code, sec. 3369), but requires that the court grant relief from it.''

The recent case of *Henck* v. *Lake Hemet Water Co.,* 9 Cal. (2d) 136 [69 Pac. (2d) 849], illustrates the same principle. There the plaintiff was entitled to receive specified quantities of water from defendant's distributing system under a contract requiring the plaintiff to pay $50 on January 1st of each year. The contract also provided: ''The payment of said sums at the time stated is a condition precedent to the right of the party of the second part to receive or use any

water hereunder, and the failure to make such payment shall give the party of the first part the right without notice to terminate this contract." In a prior suit between the parties the plaintiff had been adjudged "entitled to have water delivered upon said land by the defendant . . . so long as the plaintiff shall henceforth comply with the requirements and conditions of said contract". For two years defendant had sent plaintiff advance notices of payments to become due, but in December, 1933, the usual notice was not sent and the plaintiff failed to make his payment on January 1, 1934. Eight days later defendant sent him a notice that his rights under the contract had been terminated. On January 11th plaintiff made a tender of $50 together with interest from January 1st, which was refused. In the action brought by the property owner for reinstatement of the contract, the defendant contended that time was of the essence of the contract, hence the plaintiff's rights had been forfeited. But the court held that time was not an essential element of the contract and that, even if it were, a court of equity had power to relieve against the forfeiture under the facts shown.

In the present case the finance company insists that the consent decree is nothing more than an option to purchase which was not exercised by the appellant within the time limited and that it terminated upon the expiration of that time. It is true that time is of the essence of the ordinary option contract and no forfeiture results from a strict enforcement of its terms, because an option is merely an offer to sell and vests no estate in the property to be sold. (*Wightman* v. *Hall,* 62 Cal. App. 632 [217 Pac. 580] ; Williston on Contracts, vol. 3, Rev. Ed. p. 2389, sec. 853.) However, the agreement of the parties embodied in the interlocutory decree is not, strictly speaking, an option. It is more in the nature of a contract of redemption. Appellant and her husband had formerly owned the legal title to the property, and from the facts alleged in their complaint, which presumably were proved prior to the entry of the consent decree, the plaintiffs retained an equitable interest in the property under the respondent's agreement to permit them to refinance the trust deed indebtedness. The interlocutory decree confirmed this interest by providing a period within which the plaintiffs might redeem their property. Hence a decree quieting title in the respondent necessarily caused a forfeiture of the appel-

lant's equity which, as the record indicates, was worth at least $12,000.

Under the authorities cited, the superior court had the right to relieve against the forfeiture of this sum. Moreover, under section 3275 of the Civil Code the court would have been justified in making an order denying the motion for entry of a final decree. Relief to persons in situations substantially similar to that of the appellant has been permitted where the equities were far less favorable to the party in default. In *Los Angeles Auto Tractor Co.* v. *Superior Court,* 94 ·Cal. App. 433 [271 Pac. 363], an interlocutory decree ordered the plaintiff's title to be quieted unless within 30 days after entry of judgment the defendant should pay $15,500 plus interest and certain other sums due under a contract for the sale of real property by plaintiff to the defendant's assignor. No payment was made within the time limited and plaintiff moved for final judgment. The motion was denied on a showing that defendant would be able to comply within a short time. Thereafter the court granted numerous extensions of time and permitted continuances which resulted in a delay of almost a year. The plaintiff finally sought a writ of *mandamus* to compel the trial court to enter a final decree in his favor. It was held that the court had power to enlarge the time of payment called for in the interlocutory decree and had not abused its discretion in the orders made. Concerning the equity power to supervise decrees, the court said:

"The power of a chancery court to supervise the execution of its orders, and even to modify them in ways affecting only the details of their performance, has long been recognized. 'There are some cases of decrees which, although they are final in their nature, require the confirmation of a further order of the court before they can be acted upon. In cases of decrees of foreclosure, the court will, upon application, enlarge the time for payment of the money, even though the final order has been enrolled.' (Daniell's Chancery Practice, 6th Am. Ed., pp. 991-993.) We find nothing in our statute or decisions which can be said to have been intended to limit the power of the Superior Court in a suit in equity to grant relief properly adjusted to the equitable rights of the parties as determined by the court, and to control the parties in all matters connected with their required obedience to the orders embodied in the decree."

It is true that the case last cited did not involve a consent decree and that it has been generally held in other jurisdictions that a court of equity has no power to modify or vary the terms of decrees entered by the stipulation of the parties. But conceding the validity of this distinction in its general application to such decrees, upon principle there is no reason to deny the court's power to extend the time for performance which exists with respect to a simple contract merely because it is embodied in a consent decree of the court.

The appellant attempted in good faith to comply with the provisions of the decree. She offered full performance eight days after the time required. Indeed, the finance company at that time refused to accept the payment of all principal, interest and charges claimed by it but insisted upon retaining the debtor's property notwithstanding the clear showing that Mrs. Leslie's default was not the result of gross negligence, or of a wilful or fraudulent breach of duty. There is no evidence that the respondent suffered any substantial prejudice as a result of the delay or that full compensation could not have been made for the delay. Under these circumstances it was the duty of the court to grant appellant the relief she sought.

The judgment is reversed.

Shenk, J., Houser, J., and Curtis, J., concurred.

Rehearing denied.