[L. A. No. 20942. In Bank. May 29, 1950.]

LESSER AND SON (a Copartnership) et al., Respondents, v. SAM SEYMOUR et al., Appellants.

Overton, Lyman, Plumb, Prince & Vermille and Carl J. Schuck for Appellants.

Knight, Gitelson & Ashton, Thompson & Colegate and Alfred Gitelson for Respondents.

CARTER, J.—A partnership, called Lesser and Son, and its members, plaintiffs, entered into a partnership with the Seymours, defendants, for the purchase, operation and sale of certain real and personal property. Difficulties having arisen, plaintiffs commenced an action to dissolve and terminate the partnership, praying for an accounting and that a receiver be appointed to preserve the partnership assets. Audi Bryant was appointed receiver with full powers as such to manage, operate and control all of the partnership assets and business, the court stating that it reserved jurisdiction to instruct the receiver and increase his powers. The receiver took possession of the property and proceeded to operate the business. Thereafter, in December, 1947, plaintiffs moved for an order directing the receiver to sell the property in the manner prescribed by law for execution sales on the ground that the expense of operating the property was great and insufficient funds were available therefor; that great loss and depreciation would result if the property were not sold. The court made its order on December 15, 1947, directing the receiver to sell the real property of the partnership and personal property situated on or used in connection with it. It was provided therein that if, prior to June 2, 1948, the receiver or any of the parties "procure" an offer for the property or any part thereof, the receiver is to file with the court a petition for confirmation; that if the parties receive an offer, they shall notify the receiver, and if it be the highest offer thus far received by the receiver, confirmation shall be asked by the receiver; that upon the hearing of any petition for confirmation, any party (to the action) may be a purchaser thereat and at such hearing any person may raise the offer under consideration; all sales are subject to confirmation by the court; offers must be accompanied by a 5 per cent deposit. Then it recites: "In the event that the . . . property or any part or portion thereof shall not be sold in the manner as above set forth prior to the 2nd day of June, 1948, the Receiver . . . is now hereby ordered to sell said receivership property or the unsold portion thereof in the manner and upon the notice prescribed by law for the sale of such property under execution. Such sale shall not be final until confirmed by this court upon a petition for confirmation by the Receiver herein."

Audi Bryant resigned as receiver and F. L. Conaway was appointed in his place, on January 22, 1948, for all the assets of the partnership. The order of appointment recites that

the court reserves jurisdiction to instruct the receiver and to increase his powers; and Conaway is invested with all the rights and duties conferred by the order of sale heretofore mentioned.

Pursuant to the order of sale and on February 2, 1948, Conaway having received on December 24, 1947, an offer from Anita Short to buy the property (with exceptions hereafter noted) for $450,000, filed a petition for confirmation. Defendants filed objection to the sale making various claims: that the sale was not for the best interests, that notices of the sale had not been given, that it was not a propitious time for the sale as the grapes had no foliage, and that the bid was too low. Plaintiffs countered those objections by pointing out that the operation of the property was a losing proposition and they had to advance money to keep it going but defendants would not supply an equivalent sum.

The confirmation came on for hearing from time to time (March 5, 13 and 25; April 13; May 10; and June 2, 3, and 5), and finally on July 8, 1948 (entered *nunc pro tunc* as of June 2, 1948), findings of fact and conclusions of law, and order of confirmation were filed by the court. Therein it recited the above mentioned events; that the court offered all the partnership property for sale in open court, notice having been duly and regularly given; that plaintiffs were the highest and best bidders offering $518,065.20, and their bid was accepted. It found that the foregoing events had transpired; that the operation of the property by the receivers had resulted in substantial loss (particularized); that plaintiffs had loaned money to the receiver to keep the operations afloat but defendants had advanced none; that the affairs of the partnership in receivership were in a sad state and getting worse; that the parties had diligently tried to find a purchaser for the property and it was listed with many real estate brokers; that advertisements were made by the receiver for the sale of the property in newspapers with national circulation and brokers were advised, and wide publicity and due and regular notice had been given that the court would receive bids on March 25, 1948; that on said date plaintiffs were the only bidders and offered $478,301.04, which was amended to $518,065.20, and that this included all assets; that such bid was fair and reasonable and it was for the best interest to accept it; that said bid as amended be accepted and the property sold to them for that sum; that prior to the making of that bid, plaintiffs offered $539,541.64, to be adjusted up-

ward or downward depending on the liabilities of the partnership, including the partners' capital investment, but in response to defendants' objection to a bid on such a formula which would result in a variable price figure, it was withdrawn by plaintiffs and the aforementioned unconditional and firm bid was accepted.

Defendants assert that the order of sale of December 15, 1947, required that the sale take place by June 2, 1948, and if it did not, the property should be sold in the manner of an execution sale; and as plaintiff's final firm bid was not made or accepted until June 5, 1948, it did not come within the terms of the order of sale and thus the court had no jurisdiction to confirm it. That is to say, they claim that the order of sale and each part thereof was beyond the power of the court to modify and that the sale by the court after June 2, 1948, was in effect a modification, for after that date the sale should have been as an execution sale.

We are satisfied that a court in an equity proceeding has the power to change the manner of sale of property in its custody by a receiver appointed by it from that previously prescribed by it in the order directing the sale, and in that connection may make the sale itself although the prior order called for it to be made by the receiver.  In effect, the directions in the order of sale with regard to the manner in which it should be made, are merely instructions to the receiver—his procedural directions. They do not go to the substantive rights of the parties.  Of course they are binding upon the receiver, and while, for some purposes, they may be final, yet the main function of the court is to manage or dispose of the estate in the best manner possible and for the best interest of the parties concerned. To effectually perform that duty necessarily requires some flexibility and continuity of jurisdiction in giving instructions to the receiver as to the manner in which the property should be sold to meet exigencies as they may arise.

The foregoing comments follow from the principles applicable to judicial and receivership sales in equity proceedings. The receiver is a mere agent and the property in his hands is really under the control and continuous supervision of the court. (*Title Ins. & Trust Co.* v. *California Dev. Co.*, 159 Cal. 484, 492 [114 P. 838]; *Free Gold Mining Co.* v. *Spiers*, 135 Cal. 130 [67 P. 61]; *In re Moore*, 88 Cal. 1 [25 P. 915]; *Baumann* v. *Bedford*, 18 Cal.2d 366 [115 P.2d 437].)

In analogous situations it has been held that the court may change the mode or procedure in executing its decrees although the decree specifies a particular method. The time for performance specified in the decree may be extended. (*Gibson* v. *River Farms Co.,* 49 Cal.App.2d 278 [121 P.2d 504].) There is a clear distinction between material adjudicated portions of a judgment or decree, and mere procedural matters incident to the determined issues, which are incorporated as the proposed means of fulfilling the judgment. It has been held in California that when a decree or judgment reserves jurisdiction to change or modify mere procedural provisions, as distinguished from material adjudications of substantial issues, it is not an abuse of discretion for the court to extend the time limit. (*Gibson* v. *River Farms Co., supra; Leslie* v. *Federal Finance Co., Inc.,* 14 Cal.2d 73, 81 [92 P.2d 906] ; *Los Angeles A. T. Co.* v. *Superior Court,* 94 Cal.App. 433 [271 P. 363] ; *Tyler* v. *Shea,* 4 N.D. 377 [61 N.W. 468, 50 Am.St.Rep. 660] ; 15 R.C.L. 678, § 129 ; 34 C.J. 232, §§ 451, 452.)

In *Los Angeles A. T. Co.* v. *Superior Court, supra,* the time for making a designated payment was extended five successive times. It was held that these orders did not constitute a material change in substantial adjudicated portions of the judgment, but that they merely applied to procedural matters intended to accomplish the enforcement of the judgment and constituted a valid exercise of jurisdiction retained by the court. This case appears to be determinative of the issue on appeal in the present action.

In the cited cases, although it appears that the court reserved jurisdiction in its decree, it would seem that the principles and compelling necessities of a case like we have here require the reservation of such power without stating it in the decree. (See, also, *Bechtel* v. *Wier,* 152 Cal. 443 [93 P. 75, 15 L.R.A.N.S. 549] ; *In re Receivership of Great Western Beet Sugar Co.,* 22 Idaho 328 [125 P. 799, 43 L.R.A.N.S. 671] ; *Hercules Glue Co., Ltd.* v. *Littooy,* 45 Cal.App.2d 42 [113 P.2d 490].)

The cases, *Fish* v. *Fish,* 216 Cal. 14 [13 P.2d 375], and *Leeper* v. *Superior Court,* 62 Cal.App. 736 [217 P. 811], are distinguishable, for they were concerned with whether an order for a sale of property by a receiver was final and thus appealable. It was not a question of the method of the sale or who should conduct it. In the instant case, the property

was to be sold in any event; the only alternative was the time and method of the sale. While the court in making the sale assumed it was proceeding pursuant to the order of sale (and in a general sense it was), yet it in effect adopted and followed a different method, that is, a sale by itself rather than the receiver and at a time extending beyond the date (June 2, 1948) specified in the order of sale, and further sold all of the assets of the partnership, rather than those described in the order of sale which did not include an account receivable in the sum of $21,376.44.

In connection with the inclusion in the sale of the last mentioned item, defendants urge that such was not proper because it exceeded the scope of the order of sale. That was not an alteration of the order of sale. It would not be doubted that the court could order a portion of the property sold by the receiver and by subsequent order direct that the balance be sold. Here, assuming the sale made and proceedings involved therein were in effect also an authorization to make a small addition to the property to be sold which resulted in embracing all of the property, and as the court was conducting the sale and advertisement, notice and publicity were given therefor, we see no reason to question its propriety. Defendants were present and actively participated in the hearings in which all the assets were to be sold and made no objection thereto.

Defendants concede that the findings accurately describe what transpired when they state, as above mentioned, that, pursuant to defendants' objections, the $539,541.64 bid of plaintiffs was not accepted for it was not certain but was to fluctuate up or down to equal no more or less than the liabilities of the partnership; that plaintiffs bid $518,065.20 (which was accepted) ''unqualifiedly without contingency or adjustment.'' They object, however, to the final order in the sale proceedings which provides that plaintiffs in paying the price may have credited thereon: (1) money lent by plaintiffs to the receiver and receivership estate during the course of receivership; (2) payments made by plaintiffs to creditors of the receivership estate to whom the receiver is indebted; (3) payments made by plaintiffs to creditors of the partnership; (4) any sums *not necessary* for payment of the obligations and liabilities of the receivership estate and all obligations and liabilities of the partnership, not including any

capital of defendants; (5) all liens and encumbrances on the assets.

Certainly defendants cannot object to items 1, 2, 3 and 5 on the ground that plaintiffs' bid was for the amount stated over and above all moneys it had advanced and all liabilities of the receivership and partnership. There is nothing to indicate that the bid was so made or indicated. On the contrary, one of the purposes of the sale was to discharge obligations. The allowance of credits for those liabilities would not in any way cut the bid price—make it a variable amount. If, when all of such liabilities had been paid or credited, the price had not been consumed, the balance would be payable to the receiver. It is not improper to allow credits to the purchaser on the purchase price for sums owed to him by the receivership estate for it would be idle to pay the money to the receiver and have him pay it back to the purchaser. (See *Owen* v. *Cohen*, 19 Cal.2d 147 [119 P.2d 713].)

Nor can it be said that such credits were improper because the partnership and receivership creditors' claims had not been presented or filed. The creditors in those items are only those shown on the *books of the partnership and receiver*. It could hardly be doubted that such creditors must be paid, for the books of the *debtor* show the debts to be due them.

Credit (4), however, is in a different category. It in effect provides that plaintiffs, as purchasers, need not pay any more than the liabilities of the partnership and receivership estate even if they are less than the amount bid. There is an exception, however; namely, the capital investment of defendants, if any. Such investment comes out before the credit mentioned in item (4) and of course plaintiffs would be entitled to any part of the purchase price remaining after the debts were paid for their capital investment. This does not make the bid nonuniform or unfixed in amount, but merely provides a method for application and distribution of the proceeds of the sale. The court had the power and duty to provide for equitable distribution thereof. A similar method of distribution—by partial credits rather than wholly by cash —when one of the partners was the successful bidder, was approved in *Owen* v. *Cohen, supra* (19 Cal.2d at pp. 154, 155). It was there held that the adoption of the method of payment and distribution could be set aside only on a showing of abuse of discretion. Here the provision is shown to relate only to the mechanics of distribution. The bid was not thereby affected or

open to the criticism that, contrary to the court's findings, it was not "firm and unqualified," but was a "formula" bid subject to qualifications and adjustments. A different method —such as payment and distribution entirely in cash—would not have affected the end result. The method adopted was therefore not inappropriate under the circumstances, and the court did not abuse its discretion in so providing.

Defendants assert that some of the findings made in the order confirming sale are not supported by the evidence, namely, that the partnership had operated at a loss, that plaintiffs' bid was the reasonable market value of the property, that no other bid was received, that continued operation of the property was speculative, and that the only source for borrowing funds for operations was from plaintiffs. Most of those findings are not of particular importance inasmuch as the court had previously ordered a sale of the property as above shown, which took into consideration the necessity therefor, together with the factors embraced in such a determination. Defendants do not attack that determination but, on the contrary, dwell upon it at length as being a final and conclusive adjudication by the court. Moreover, defendants' attack on the finding that there was loss in the operations of the partnership is really aimed at the credibility of the accountant for the partnership and receiver and his method of accounting. The court accepted that witness' evidence and was justified in so doing. The evidence is also sufficient to show that the operation of the property by the receivers was a losing proposition and plaintiffs were the only ones who advanced any funds to keep the operations rolling. Defendants advanced nothing. The only reference made by defendants to other sources from which funds could be obtained was that the California Fruit Exchange advanced $40,000 on the 1946 grape crop, and $25,000 on the 1947 crop, all prior to appointment of a receiver. On the question of the reasonable market value of the property, it is true that there was evidence placing it at $1,000,000, but the court did not have to accept that and unsuccessful endeavors had been made to sell the property. There was a bid by a Mr. Wiseman for $130,000, all liabilities to be assumed, but it fell through as the parties could not get together on the precise terms of the transactions. There is wide discretion in the court in accepting a bid and confirming a judicial sale, and there was no fraud, unfairness or oppression in the sale. (See *Jones* v. *Sierra Verdugo Water Co.,* 63

Cal.App. 254 [218 P. 454].) It, therefore, cannot be said that there was an abuse of discretion.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied June 26, 1950.