Filed 5/15/24  Khorshidi v. Javaheri CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL KHORSHIDI et al., | B329246 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC408948) |
| v. | |
| ALEXANDER JAVAHERI et al., | |
| Defendants and Appellants; | |
| PARVIZ ABDI, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Reversed and remanded with instructions.

Reuben Raucher & Blum, Stephen L. Raucher, Yunfei Ni for Appellants Alexander Javaheri and David Javaheri.

Harrison Law and Mediation, Susan L. Harrison; Brent Law, Karen K. Brent for Appellant Parviz Abdi.

Early Sullivan Wright Gizer & McRae, Scott E. Gizer, Padideh Zargari, Zachary C. Hansen for Respondents Michael Khorshidi and Nejatolah Rabbanian.

---

## INTRODUCTION

Appellants Alexander Javaheri, David Javaheri, and Parviz Abdi (collectively, J&A) were in a joint venture with respondents Michael Khorshidi and Nejatolah Rabbanian (K&R). K&R defaulted under the terms of the joint venture agreement. J&A sued for specific performance of the provision in the joint venture agreement that allowed non-defaulting venturers to buy out the interests of defaulting venturers. In 2012, the trial court found in J&A's favor, and in 2013 the joint venture was appraised to determine the value of the buyout. Litigation on the parties' remaining claims dragged on, however, and a final judgment was not entered until 2017. When J&A asked the trial court to include the 2013 valuation in the 2017 statement of decision and judgment on J&A's specific performance claims, the trial court declined, stating that the buyout provision of the joint venture agreement was "self-executing" and "[c]ourt supervision of the buyout process is not required."

After this division affirmed the judgment in 2021, K&R refused to sell their interests in the joint venture. J&A filed a motion seeking an elisor to effect compliance with the judgment for specific performance. The trial court denied the motion on the grounds that the 2017 judgment did not include a buyout valuation. J&A appealed.

2

We reverse. The trial court abused its discretion in denying J&A's request for an elisor. In 2017, the trial court declined to include the 2013 valuation in the judgment on the grounds that court involvement was not needed for the buyout, but then declined to appoint an elisor on the grounds that no valuation was included in the judgment—effectively holding that court involvement actually *was* needed. J&A are entitled to the remedy they were awarded in 2017; the trial court's denial of the motion to enforce the judgment for specific performance rendered the judgment illusory.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Background**

   1.    *Joint venture*

On April 1, 1987, the five parties entered into a joint venture agreement ("Agreement") regarding a property at the intersection of 5th Street and Los Angeles Street in downtown Los Angeles (5th & LA). Under the Agreement, Khorshidi and Rabbanian each held a 30 percent interest in the joint venture, Abdi held a 20 percent interest, and the Javaheris each held a 10 percent interest

Section 9 of the Agreement was titled "Default and Dissolution"; it set out the terms under which a joint venturer would be considered in default of the agreement. Section 9.3 of the joint venture agreement set out how non-defaulting venturers could elect to purchase the interests of defaulting venturers. Section 9.3.1 stated, "Upon the occurrence of an Event of Default by a Venturer," the non-defaulting venturers "shall have the right to acquire the Joint Venture interest of the Defaulter for cash . . . at a price determined pursuant to the appraisal

procedure set forth in Paragraph 10" of the agreement, subject to certain adjustments.

Paragraph 10 stated, "Whenever this Agreement provides for the valuation of an interest in the Joint Venture to be purchased or sold, the value of such interest in the Joint Venture shall be determined" according to an appraisal procedure. "[E]ach Venturer or group shall select one appraiser and the two appraisers so selected shall agree upon and designate a third appraiser." "Each appraiser selected shall furnish the Venturers and the Venturer's certified public accountants with a written appraisal within ninety (90) days of his selection, setting forth his determination of the net fair market value of all real estate and other tangible assets owned by the Venture as of the date all three appraisers were selected." "Upon receipt of the appraisals of the net fair market value of the Venture, the independent certified public accountants of the Venture shall make the final determination as to the net fair market value of the Joint Venture and of the Joint Venture interest to be sold or purchased . . . ." The accountants would also "refer to this Agreement, the Capital Accounts of the venturers and other pertinent agreements and facts in determining the net fair market value of the Joint Venture and the net fair market value of each Venturer's interest in the Joint Venture." "The determination of the accountants shall be treated as the net fair market value of the Joint Venture and of the Joint Venture interests to be sold or purchased determined pursuant to this Paragraph 10 and the determination shall be final and binding on the Venturers."

2. *2009 litigation and 2012 "phase one" ruling*

There has been extensive litigation among the parties, as discussed in two prior nonpublished opinions, *Javaheri v.*

4

*Khorshidi* (Nov. 13, 2006, B183177) and *Khorshidi v. Javaheri*, Aug. 5, 2021, B285132 (*Khorshidi II*). Most of the details of the previous litigations are not relevant to this appeal. Notably, in 2008 an arbitrator found that K&R had defaulted according to the terms of the Agreement, and held that the Javaheris had the option of buying out K&R's shares in the joint venture according to the Agreement. (*Khorshidi II, supra*.)

In 2009, K&R sued the Javaheris, initiating case number BC408948. The Javaheris filed a cross-complaint for specific performance to "invoke [the] right to purchase the interest of Khorshidi and Rabbanian" under the Agreement. The Javaheris alleged in their cross-complaint that K&R had defaulted according to the Agreement, as found in a prior arbitration, and "Paragraph 9.3 of the joint venture agreement provides that a non-defaulting venturer has the 'right to acquire the joint venture interest of the defaulter for cash' pursuant to the appraisal provisions of paragraph 10. [¶] By this Cross-complaint, [the Javaheris] hereby invoke said right to purchase the interest of Khorshidi and Rabbanian." Abdi also filed a cross-complaint against K&R for declaratory relief and specific performance, using nearly identical language to invoke his right to purchase K&R's interests in the joint venture.

As stated in *Khorshidi II, supra*, the parties agreed to litigate their various claims against one another in two phases. "The parties and court ultimately agreed that phase one would determine the parties' rights to buy out the other joint venturers under the terms of the joint venture agreement." In its oral statement of decision on January 10, 2012, the trial court held that K&R had again defaulted under the Agreement, and

5

concluded that J&A could "proceed with their section 9 rights" under the Agreement. (*Khorshidi II, supra.*)

J&A reiterated in court the same day that they intended to exercise their buyout rights. The court and parties discussed how to proceed with the appraisal process required by paragraph 10 of the Agreement to determine a net fair market value of the joint venture for buyout purposes. In March 2012, all parties entered into a stipulation about the appraisal process, acknowledging the court's holding that J&A had a right to exercise their rights under the agreement to buy K&R's interests in the joint venture, and stating that the parties "have commenced the process of nominating the 3 appraisers" as required in the Agreement.

"On February 27, 2013, there was a hearing before Judge Heeseman with the three appraisers who had been selected through the appraisal process set out in the joint venture agreement. The attorneys gave short presentations to the three appraisers, [James Pike, David Zoraster, and David Rosenthal,] urging them to focus on certain issues relevant to the valuation of the building. After the presentations, the appraisers asked questions. . . . [¶] The appraisers submitted their reports, and the independent CPA submitted his report in March 2013." (*Khorshidi II, supra.*) The CPA, Michael J. Krycler, stated in his March 18, 2023 report that the joint venture's total assets amounted to $7,557,080, and its liabilities amounted to $2,328,805, so the net fair market value was $5,228,275 as of December 31, 2012. Khorshidi and Rabbanian's thirty percent shares each amounted to $1,568,483.

On July 1, 2013, K&R filed a petition to vacate a contractual arbitration award. K&R stated that the three appraisals from Pike, Zoraster and Rosenthal "collectively

6

constitute the signed award of the panel of appraisers." The trial court denied the petition, finding that "the subject appraisals did not constitute arbitration under the California Arbitration Act, [or] under the unique facts and procedures here." K&R appealed the court's ruling, but after briefing was completed and the case was set for oral argument, K&R requested dismissal of the appeal, stating that it was based on a nonappealable order. (*Khorshidi II, supra*.)

The case was transferred to a different judge. In September 2013, Abdi filed a motion for preliminary injunction asking the court to order K&R "to specifically perform pursuant to" the Agreement by "allowing Abdi to purchase at least one half of [K&R's] interest in [the joint venture] at the price of $1,568,483 per 30% interest, in accordance with rulings made during the Phase One trial of this matter and the subsequent appraisal process." K&R opposed the motion, stating in part that a preliminary injunction would amount to a final judgment being entered in the case even though there was a second phase of issues to be tried.

The trial court, with Judge Abraham Khan presiding, denied the motion. The minute order stated that the parties were going to seek a written statement of decision from Judge Heeseman. As discussed in *Khorshidi II, supra,* Judge Heeseman declined to issue a written statement of decision, instead referring the parties to his extensive oral statement of decision.

3. *Phase two, the 2014 action, and the 2017 judgment*

The case was eventually reassigned to Judge Mitchell L. Beckloff. (*Khorshidi II, supra*.) K&R filed a motion for mistrial, asserting that because phase one had been decided by Judge Heeseman, the determination of additional matters by anyone

7

other than Judge Heeseman would violate the one-judge rule. K&R also challenged the substance of some of Judge Heeseman's findings. (*Khorshidi II, supra.*) Judge Beckloff denied the motion, observing in a written ruling that Judge Heeseman had ruled on the parties' defaults and buyout rights under the joint venture agreement, and "Judge Heeseman's decision on those issues is complete and does not require further action by the court." (*Khorshidi II, supra.*)

On December 24, 2014, K&R filed another lawsuit against the Javaheris, initiating case number BC567865. K&R asserted in part that the Javaheris "intentionally acted to suppress the revenues of 5th and LA for purposes of artificially depressing its valuation" to the appraisers. (*Khorshidi II, supra.*)

"Phase two" of the parties' competing claims from the 2009 action (BC408948) and K&R's claims in the 2014 action (BC567865) were tried in a bench trial in 2017. For K&R's 2014 claims that the appraisals were flawed, the court considered the three appraisal reports and heard testimony from each of the three appraisers about the process they employed in appraising the venture. The court also considered the testimony of K&R's expert witness and forensic accountant, as well as other evidence regarding the value of the property. In July 2017, the trial court issued separate statements of decision for each case.

In its written statement of decision addressing K&R's 2014 complaint (BC567865), the court "reject[ed] [K&R's] contention that the appraisers' results are suspect and unreliable." The court found that K&R were "not entitled to any relief based upon their claims that the Javaheris took actions to artificially reduce the Joint Venture's appraised valuation in an effort to suppress any prospective buyout."

8

In its statement of decision addressing the claims raised in the 2009 action (BC408948), the trial court noted again that in phase one, "Judge Heeseman ruled on the parties' rights relative to one another under the joint venture agreement. Judge Heeseman's decision on those issues is complete and does not require further action by the court." The court continued, "Judge Heeseman determined that . . . the Javaheris are entitled to proceed with their Section 9 rights [and] Abdi can exercise his Section 9 rights." The court also noted that in phase one, Judge Heeseman found in favor of the Javaheris on their cause of action for specific performance, and "granted the Javaheris' request that they be permitted to purchase [K&R's] interest in the Joint Venture. Judge Heeseman specifically granted the Javaheris their buy-out rights pursuant to Section 9 of the JVA. . . . Judge Heeseman also permitted Mr. Abdi to participate in the buy-out pursuant to Section 9 of the JVA." The court noted that Judge Heeseman also held in favor of Abdi on his specific performance cause of action, which requested an order that K&R "specifically perform paragraph 9.3 of the JV Agreement."

However, the trial court declined the Javaheris' request to "order the sale of [K&R's] interest[s] at the price to be determined according to the appraisal process detailed in the JV Agreement." The court held that this request, which the Javaheris asserted in their closing brief, "exceeds the scope of that prayed for in the [Javaheris' cross-]complaint," because the Javaheris did not ask the court to "resolve a dispute concerning the appraisal process set forth in Section 10 of the JVA." The court continued, "The buy-out provision in the JVA is a self-executing provision. . . . Court supervision of that buy-out process is not required and was not warranted under the Javaheris' Cross-Complaint."

9

The court entered judgment in favor of J&A on July 17, 2017.  The judgment stated that J&A "are entitled to exercise their buy-out rights as against [K&R] under Section 9 of the [Agreement.]  No price or date for the buy-out of joint venture interests of [K&R] is being set or established by the Court, such matters not being encompassed by the pleadings and not before the Court."

**B.    2018 litigation**

In December 2018, after the 2017 judgment was entered and while its appeal was pending, the Javaheris filed a complaint against K&R, initiating case number 18STCV07563, which is currently pending before Judge Stephanie M. Bowick.  The Javaheris discussed the extensive litigation and multiple findings that K&R had defaulted under the Agreement, and asserted that the 2017 judgment awarded them specific performance.  The Javaheris further alleged that the three appraisers completed their appraisals, and CPA Krycler "reached his preliminary findings and published same on March 18, 2013."  Although the Javaheris were "willing and able" to buy out K&R for the appraised value, K&R "refused to consummate the transaction." The Javaheris noted that the 2017 judgment required specific performance of paragraph 9.3 of the Agreement.  In a cause of action for breach of contract, the Javaheris alleged that K&R breached the Agreement by refusing to sell their interests in the joint venture, and in a cause of action for specific performance, asked that K&R be compelled to sell their shares at the 2013 appraised value.  Another cause of action to enforce the 2017 judgment requested an order that K&R be compelled to sell their interests.

10

Abdi filed a cross-complaint noting the 2012 ruling, the appraisal process, and the 2017 judgment. Abdi also alleged that K&R refused to sell their interests in the joint venture, and continued to collect distributions from the venture even though they were not entitled to do so. Abdi alleged that K&R's refusal to sell their interests was a breach of the JV agreement, and requested specific performance of a buyout at the 2013 value. In a cause of action for "mandatory injunction," Abdi sought enforcement of the 2017 judgment.

The 2018 matter was stayed while the 2017 judgment was on appeal. In 2021, a different panel of this division affirmed the judgment in *Khorshidi II, supra.*

## C.    This appeal: motion for elisor

### 1.    *Motion, opposition, and reply*

On June 15, 2022, in the case filed in 2009 (BC408948), the Javaheris filed a motion seeking an elisor as a means to enforce the 2017 judgment. They asserted, "After the [Javaheris] sent out their demand for sale, the self-executing buyout provision in the Joint Venture Agreement was completed, and [K&R] were required to sell their interests in the Joint Venture. However, [K&R] have refused to convey their interests to date. Accordingly, the Court should enforce the transfer of [K&R's] Joint Venture interests at the 2013 appraisal amount (offset by the credits due to the Javaheris) through its broad equitable powers, on a per capita basis, and appoint an Elisor to effectuate the transfers."

The Javaheris attached a letter from their counsel to K&R's counsel requesting that K&R comply with the judgment. Abdi's counsel sent a similar letter. K&R's counsel responded that the lack of a valuation finding in the 2017 judgment meant that

11

"[t]here is no judicially ordered set price in the Judgment for the Javaheris and Abdi to enforce." K&R's letter further noted that the 30-year joint venture had expired according to the terms of the Agreement, and K&R "are willing to sell their shares to the Javaheris and/or Abdi, but the price is not one that is determined in the 2017 Judgment or any other prior Judgment or ruling."

In the Javaheris' motion seeking appointment of an elisor, they asserted that the appraisal had been completed in conformance with the Agreement, and "the 2013 appraisal amount undisputedly is final and binding on all venturers." They continued, "After the 2017 Judgment specifically ordered K&R to perform Paragraph 9.3 of the JV Agreement, the Javaheris notified K&R of their election to buy them out at the 2013 appraisal amount, both via the filing of the 2018 lawsuit and their demand letter of April 29, 2022, so K&R now legally and contractually must sell their JV interests to the Javaheris at the 2013 appraisal amount (less credits due). Yet they have refused to do so, necessitating the Court's adoption of the 2013 appraisal amount." The Javaheris also asserted that K&R "actively participated in the entire appraisal process," and "[a]lthough they objected to the appraisal process later, their objection was meritless" according to the 2017 judgment, "so it is now proper for the Court to adopt the 2013 appraisal amount, rather than force the Javaheris to seek the same remedy in a different action."

The Javaheris noted that their request was "not based on the scope of the original pleadings, but rather on the court's equitable powers to enforce" the 2017 judgment. They asserted that "an Elisor is necessary to consummate the sale of two-thirds of K&R's interest (40%) to the Javaheris based on the 2013

12

appraisal amount of $7,555,000 (less credits due), with the other one-third (20%) being sold to Abdi."

Abdi filed a memorandum of points and authorities stating that he supported the Javaheris' request to have the court appoint an elisor to transfer K&R's interests.

K&R opposed the motion, arguing that the Javaheris were "ask[ing] ask this Court to do what it expressly said it cannot do without violating the One Judge Rule—decree that [K&R] are required to sell their interests in the joint venture . . . at the 2013 appraised price. Compounding the problem, the Javaheris are asking this Court to provide the same relief the Javaheris are currently seeking by way of their 2018 action in front of Judge Bowick, essentially asking this Court to usurp Judge Bowick's jurisdiction over the parties' present dispute."

K&R noted that the 2017 judgment specifically stated that the court would not set a price for the buyout. They argued that by seeking an order for an elisor, the Javaheris were "effectively asking for this Court to retroactively determine issues that [the Javaheris] failed to raise in the Consolidated Cases prior to the 2017 Judgment and issue a completely different ruling than the Court initially issued." K&R noted that in its 2017 statement of decision, the trial court observed that the buyout provision in the Agreement was "self-executing" and did not require court involvement. K&R also argued that they had not sold their shares to the Javaheris because the Javaheris "never actually made such a demand for K&R to sell their shares at any time,

despite having been vested with this right" under the 2017 judgment and earlier arbitration awards.[1]

In their reply, the Javaheris asserted, "Although this Court did not set a buyout price in the 2017 Judgment, the 2013 appraisal process, due to its self-executing nature, has produced the final and binding buyout price pursuant to Paragraph 10.2 of the JV Agreement, and the Court need not make any further determination." They argued that if the court granted the motion for an elisor, the court would "simply be enforcing the specific performance relief awarded to the Javaheris against K&R, and will not be modifying anything in the 2017 Judgment."

2. *The trial court's initial ruling*

At a hearing on July 8, 2022, the trial court noted that it was "concerned about how [to] determine the adjustments that have to be made [pursuant to the Agreement], which is clearly called for in section 10, when all of that would be subject to dispute. I'm not sure that it's appropriate, the enforcement of the judgment."[2] The court continued the matter until after Judge Bowick ruled on the pending demurrers in the 2018 action, in which the parties were asserting some similar legal arguments.

---

[1]     The record includes many demands that K&R sell their shares to J&A, including demands in the 2009 cross-complaints and the 2018 pleadings.

[2]     Section 10 of the Agreement required the CPA, in determining the fair market value of each venturer's interest, to consider "the Capital Accounts of the Venturers and other pertinent agreements and facts." Here, because the valuation was completed in 2013 but the parties had remained co-venturers for the ensuing decade as the litigation dragged on, the parties and court acknowledged that some changed circumstances should be considered when determining a final buyout valuation.

14

After the hearing, Abdi filed a "position statement in support of appointing an elisor," stating, "The time has come to finally make the 2012 ruling and 2017 Judgment mean something, and there is NO reason to allow K&R to delay the interest transfers any further." He also asserted that the 2017 trial and judgment specifically addressed K&R's challenges to the 2013 appraisals, and "[t]his Court did not decide a hypothetical question regarding an appraisal price that would never be used. The 2013 Appraisal Price was reached by the appraisers, challenged by K&R, analyzed by the Court, and found to be appropriate, for a reason. It must now be used by this Court." K&R objected to this late filing.

There was a second hearing on the elisor motion on October 26, 2022, and the court took the matter under submission. On November 23, 2022, the trial court issued a written order stating that it intended to grant the motion, and setting an evidentiary hearing. The court discussed the history of the litigation and noted, "[K&R] have known since early 2012 they were defaulting co-venturers. The Joint Venture Agreement made clear their obligations at that point—forced sale to Abdi and the Javaheris." The court also stated, "The Javaheris have sought enforcement of the 2017 Judgment. There can be no real question [K&R] have elected not to specifically perform as required by the 2017 Judgment. An enforcement action is appropriate."

The court stated, "[T]he court is not modifying the now final 2017 judgment—the court is merely implementing it. [K&R] have been ordered to comply with the Joint Venture Agreement and its buy-out provisions. [K&R] acknowledge [that the CPA] Krycler determined the fair market value of the joint venture pursuant to the terms of the Joint Venture Agreement.

15

To the extent, [K&R] attempted to undermine Krycler's opinion, they failed. The court upheld the appraisals and (after considering significant testamentary and documentary evidence) found the appraisals were unassailable. The buy-out provisions of the Joint Venture Agreement do not require the court's involvement, but [K&R] have chosen to not comply with the court's specific performance command in the 2017 Judgment necessitating enforcement measures. To adopt [K&R's] position is as if the 2017 Judgment does not exist."

The trial court further stated, "[T]he relief requested does not alter the substantive rights of the parties—it merely enforces the court's 2017 Judgment. The relief requested is consistent with the finding that [K&R] are defaulting co-venturers, and Krycler set a fair market value on the joint venture based on appraisals conducted pursuant to court order and evaluated by the court. The court is not adjusting the respective rights of the parties beyond that required in the 2017 Judgment." The court stated, "[T]o the extent [K&R] challenge adjustments to the buy-out price (not the valuation date or appraisal amounts) the court intends to set an evidentiary hearing.[ ] An evidentiary hearing will provide the parties with the right to be heard about Krycler's valuation and changed circumstances such as the joint venture's payment of debt. The court also notes the Joint Venture Agreement at paragraph 8.6.2 provides for certain adjustments. The court cannot make those adjustments in the context of enforcing the court's judgment without an evidentiary hearing.... Plaintiffs' objections based on claimed offsets (not the valuation date or appraisal amounts) may also be addressed at an evidentiary hearing." The court reiterated, "Again, the court finds against [K&R] on their claim Krycler's valuation cannot

16

serve as the basis for the buy-out price and will not entertain further argument on the issue." The court set an evidentiary hearing. The parties filed a joint stipulation of undisputed facts, and filed briefs asserting their positions regarding valuation and offsets.

        3.    *The trial court's denial of the elisor motion*

        At the hearing on April 13, 2023, the trial court stated that it wanted to revisit the issue of "whether the motion should be granted." The court stated that it was reconsidering its previous ruling because the 2017 judgment did not set a price or date for the buyout.

        Counsel for the Javaheris noted that the court stated in its 2017 ruling that the buyout terms of the Agreement were "self-executing." He continued, "[T]he court ordered the parties to specifically perform and . . . there has been a refusal to comply with that decree of specific performance. So if we can't then come back to your honor and enforce it pursuant to what should be self-executing terms of the joint venture agreement then the whole exercise was for nothing and the relief that your honor ordered was, you know, meaningless."

        Counsel for Abdi agreed, stating that the court would not be setting the price for the buyout, rather, "[t]he appraiser sets the price and all we need you for is enforcement of your specific performance judgment and that is what it boils down to."

        Counsel for K&R argued that in 2013, the Javaheris and Abdi "could have tendered the funds that they thought were due to my clients, they could have opened an escrow, there were many things that they could have done or initiated a lawsuit saying we want to enforce that. They didn't do any of those things which then results in 2013 appraisals whether you want to

17

call it waiver, latches or statute of limitation the claim on that is bar[red]." He asserted that K&R "couldn't be enforced [*sic*] to sell [for] that 2013 price anymore because [J&A] did not take the appropriate steps to enforce that appraisal."

The trial court noted that K&R's 2014 complaint challenged the 2013 appraisals, and much of the 2017 trial involved testimony from each of the appraisers and Krycler. The court asked K&R's counsel, "I'm curious as to what that was all about then if Khorshidi and Rabbanian were not conceding the issues that they were bound by the 2013 appraisals. Why were they challenged then?" K&R's counsel responded that the 2013 valuation could have had an effect if J&A had "taken the appropriate steps to enforce those remedies," but they did not.

Abdi's counsel disagreed, stating, "Khorshidi and Rabbanian have consistently taken the position in numerous pleadings filed that they were not required to sell despite Judge Heeseman's finding and ruling until a final judgment was entered." She added, "They stipulated to it, they agreed to it, they made every single challenge they can up and down the court system numerous times and trying to make us wait for yet another action that they are going to appeal again is just not appropriate." The court and parties turned to the question of the appropriate value of the buyout, which we do not summarize here.

The following day, the trial court issued a short, two-page order denying the elisor motion. The court stated, "In the context of these difficult protracted proceedings before multiple judicial officers (and three different attorneys representing K&R and two different attorneys representing the Javaheris) the court finds it inequitable to use an elisor here in aid of enforcement of the

18

court's judgment. Importantly, the use of an elisor appears to conflict with the court's judgment finding it inappropriate to set a buy-out price or date." The court continued, "When the court entered its judgment the court specifically denied the Javaheris' request to order the sale of K&R's interest in the joint venture pursuant to the appraisal process detailed in the joint venture agreement. Among other things, this court found the parties had not prayed for court supervision of the buy-out process."

The court stated that because the availability of the court record was limited, "it is not entirely clear whether K&R could be deemed to have consented to the appraisal process." It noted, however, that "K&R challenged the validity of the appraisals in their first amended complaint in Case No. BC567865 . . . as if they were bound by them." The court concluded, "Given that the court did not enter its judgment in this matter until July 17, 2017, K&R's challenge to their status as defaulting joint venturers in that judgment, the judgment becoming final on October 12, 2021 as well as the lack of clarity concerning K&R's consensual participation of the appraisal process (and their related challenge to values), the court cannot find appointment of an elisor is appropriate and warranted in equity here."

The Javaheris and Abdi timely appealed. (Code Civ. Proc., § 904.1, subd. (a)(2).)

## DISCUSSION

J&A contend that by denying the elisor motion, the trial court rendered the 2017 judgment for specific performance illusory. K&R assert that the trial court's denial was correct, because the court never granted J&A the relief they now seek.

19

## A. Legal standards

 "Every court" has the power to "compel obedience to its judgments." (Code Civ. Proc., § 128, subd. (a)(4).)  It is well established that a trial court has the "inherent power . . . to exercise reasonable control over litigation before it, as well as the inherent and equitable power to achieve justice and prevent misuse of processes lawfully issued." (*Venice Canals Resident Home Owners Assn. v. Superior Court* (1977) 72 Cal.App.3d 675, 679.)

 "[A]n elisor is a person appointed by the court to perform functions like the execution of a deed or document." (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020 (*Blueberry Properties*); see also *Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635 ["in common legal parlance the term elisor is used to designate persons appointed to perform functions such as . . . deed and document execution"].)  "A court typically appoints an elisor to sign documents on behalf of a recalcitrant party in order to effectuate its judgments or orders, where the party refuses to execute such documents." (*Blueberry Properties, supra*, 230 Cal.App.4th at p. 1020.)

 A trial court's order regarding the appointment of an elisor is reviewed for abuse of discretion, considering "the court's authority and reasonableness in issuing the order appointing the elisor." (*Blueberry Properties, supra*, 230 Cal.App.4th at p. 1020.) "'An abuse of discretion occurs only where it is shown that the trial court exceeded the bounds of reason.  [Citation.]  It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable.'" (*Ibid.*)

The elisor motion was a request that the court employ its equitable powers. "[A] a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees." (*Brown v. Brown* (1971) 22 Cal.App.3d 82, 84 (*Brown*).) "When a trial court makes a ruling based upon equitable considerations, the abuse of discretion standard applies on review of that ruling." (*Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1025.)

**B.    Analysis**

J&A assert that the trial court's denial of the elisor motion "essentially renders [the 2017 judgment] illusory" by holding that J&A were not entitled to the relief they were awarded in 2017— specific performance of the "self-executing" buyout.  Indeed, in 2012 Judge Heeseman found that J&A were entitled to the remedy of specific performance of the buyout provision in the Agreement.  The 2013 appraisals and CPA report set a value for the joint venture, and K&R's challenges to the valuation were unsuccessful.  In its 2017 judgment the trial court declined to include a buyout date or amount because the buyout provisions were "self-executing," and "[did] not require any court involvement."

K&R, however, refused to perform as required by the 2017 judgment.  When J&A asked that the court enforce its judgment, the trial court declined based on reasoning that contradicted the judgment.  When the trial court held that J&A were not entitled to the relief they sought in the elisor motion because a buyout date and amount were not included in the 2017 judgment, the court effectively held that the buyout provisions were *not* self-executing, and that a court finding *was* in fact required before J&A were entitled to specific performance.  This contradictory ruling rendered the judgment for specific performance illusory,

21

and therefore denial of the motion was an abuse of the trial court's discretion.

The court's refusal to enforce its 2017 judgment deprived J&A of the benefits of the judgment. J&A's causes of action for specific performance were claims in equity. (See, e.g., *Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 409 (*Darbun Enterprises*) [a "plaintiff may seek specific performance, an equitable remedy, as an alternative to damages"].) A successful claim for specific performance necessarily includes a finding that a remedy at law would be inadequate. (*Id*., p. 409 fn. 5.) As the trial court correctly recognized in its initial ruling stating its intent to grant the elisor motion, "There can be no question the court ordered [K&R] to transfer their interest in the joint venture to [J&A] pursuant to provisions in Section 9.3 of the Joint Venture Agreement. . . . The 2017 Judgment did not provide [K&R] with a choice—the court ordered them to perform the buy-out process contained within the Joint Venture Agreement." K&R have refused to comply with the judgment, and as the court noted in its initial order stating its intent to grant the elisor motion, "To adopt [K&R's] position is as if the 2017 Judgment does not exist." Yet when the court changed its ruling and denied the elisor motion, this is the position it adopted.

K&R argue that J&A "have never been granted the relief they sought in their motion." They assert that because the trial court declined to include a buyout value in the 2017 judgment, J&A are now attempting to get "a second bite at the apple," and are "effectively asking this Court to ignore the findings of the trial court." We disagree. The trial court's conclusion in 2017 that a judicial finding on the buyout valuation was unnecessary

22

was not tantamount to a statement that the 2013 valuation was ineffective or unenforceable.  Rather, the trial court simply found that no specific finding about the valuation was necessary at the time.  Neither party challenged this ruling, and the conclusion is supported by the Agreement itself, which states that a valuation as completed in section 10 of the agreement "shall be final and binding on the Venturers."

K&R complain that J&A want to exercise their buyout rights "at the 2013 Appraisal Price (at the bottom of the real estate market following the financial crisis) as opposed to current prices (or even 2017 prices), a multi-million dollar swing in the buy-out price."  However, the history of the litigation makes clear that K&R were aware they would be bound by the 2013 valuation.  They challenged the valuation first as an arbitration award, and then in a separate lawsuit leading to years of litigation culminating in the 2017 trial.  The court below, in a bench trial that included testimony from the appraisers and expert witnesses, rejected K&R's claims that the appraisal process was improper, tainted, or otherwise invalid.  K&R did not appeal that portion of the court's ruling.  There can be no credible argument that the 2013 valuation was somehow unfairly foisted upon K&R; that K&R have been prejudiced by delays that were, in large part, of their own making; or that K&R are entitled to reap the benefits of changed market prices following such delays.  Thus enforcement of the 2017 judgment—based on the 2012 finding that J&A were entitled to specific performance of a buyout and the 2013 valuation—will not materially change the parties' substantive rights.  (See, e.g., *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 500 ["There is a clear distinction between material adjudicated portions of a judgment of decree, and mere

procedural matters incident to the determined issues, which are incorporated as the proposed means of fulfilling the judgment."].)

J&A assert that the trial court, acting in equity, erred by holding that it was limited to the allegations in the 2009 cross-complaints. Indeed, "'[i]t has always been the pride of courts of equity that they will so mold and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.'" (*Times-Mirror Co. v. Superior Court in and for Los Angeles County* (1935) 3 Cal.2d 309, 331.) "[E]quitable relief is flexible and expanding, and the theory that 'for every wrong there is a remedy' [(Civ. Code, § 3523)] may be invoked by equity courts to justify the invention of new methods of relief for new types of wrongs." (13 Witkin, Summary (11th ed. 2023) Equity, § 3; see also *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 729 ["Equity having taken jurisdiction over a cause does complete justice, even to the extent of exceeding the specific prayers of the complaint when necessary."].) Thus, it was not beyond the court's equitable powers to fashion an appropriate remedy to enforce the 2017 judgment, even if such a remedy was not explicitly anticipated by J&A in their 2009 cross-complaints.[3]

---

[3] The trial court also had authority to modify the judgment if necessary. "[I]n a circumstance in which a trial court issues a judgment governing future actions and there exists the possibility of an unforeseen change in circumstances over which the judgment has no control, the court retains the inherent authority to modify that judgment when such changes in circumstances render modification necessary or appropriate." (*Petrolink, Inc. v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 169, citing Rest.2d Judgments, § 73, com. b.)

J&A assert that they should not have to pursue enforcement of the 2017 judgment in a separate litigation, which will further delay resolution of the case. K&R argue that J&A have brought such a result upon themselves by filing the 2018 litigation, which included requests to enforce the 2017 judgment. We agree with J&A that resort to additional litigation to enforce the judgment is unnecessary. In *Brown, supra*, 22 Cal.App.3d 82, for example, a divorce decree ordered that certain stock be divided between the spouses. The wife, Beverly, sold her share of the stock for $11,680 and paid the husband, Leon, $1,086. The trial court ordered Beverly to pay Leon the remaining half of the sale amount. On appeal, Beverly argued that the trial court's order modified the judgment. The appellate court disagreed, stating that the court's order "merely implemented the existing order to divide the stock." (*Brown, supra*, 22 Cal.App.3d at p. 84.) The court continued, "Under the circumstances it would have been reasonless for the trial court to bring about unnecessary litigation and delay an inevitable result by requiring Leon to initiate a new action against Beverly to obtain what was already his under the existing judgment." (*Ibid*.) The same is true here—J&A are entitled to specific performance under the 2017 judgment, and additional litigation to establish that entitlement is unwarranted.

K&R point out that Judge Bowick, presiding over the litigation filed in 2018, recently denied Abdi's motion for summary judgment. Abdi moved for summary judgment on the issue of duty only, and based on the evidence presented, Judge Bowick found a triable issue of material fact and denied the motion. K&R assert that this ruling, as well as the parties'

25

various disagreements about how to implement the judgment, support the court's denial of the elisor motion.

Indeed, the parties continue to disagree about how the 2017 judgment should be enforced.  Because the valuation was completed in 2013, the parties and court will need to determine, for example, the effects of years' worth of distributions, tax liabilities, and other details.  We express no opinion on these matters; the parties and trial court are in the best position to determine them in the first instance.  However, these details cannot serve as a basis to undermine the court's 2017 award of specific performance to J&A.  Because K&R have refused to comply with the judgment for specific performance—a fact K&R do not deny—J&A were entitled to the remedy of an elisor to enforce the judgment.  The court's refusal to enforce its 2017 judgment deprived J&A of the benefits of that judgment, and therefore was an abuse of discretion.[4]

## DISPOSITION

The order denying the motion for an elisor is reversed, and the matter is remanded for further proceedings consistent with this opinion.  Appellants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, ACTING P. J.

We concur:

MORI, J.                              ZUKIN, J.

---

[4]     K&R filed a request for judicial notice of four documents. These documents are already in the parties' appendixes, so judicial notice of them is unnecessary.  The request for judicial notice is therefore denied.

26